UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X

| | |
|---|---|
| In re NASSAU COUNTY<br>STRIP SEARCH CASES | 99-CV-3126 (DRH)<br>99-CV-2844 (DRH)<br>99-CV-4238 (DRH) |
| ------------------------------X | **MEMORANDUM AND ORDER** |

**A P P E A R A N C E S:**

**For the Plaintiffs**:

**Beldock Levine & Hoffman LLP**
99 Park Avenue, Suite 1600
New York, New York 10016
By:   Robert L. Herbst, Esq.
        Jonathan C. Moore, Esq.
        Vera M. Scanlon, Esq.

**Emery Celli Brinckerhoff & Abady LLP**
75 Rockefeller Plaza, 20th Floor
New York, New York 10019
By:   Matthew D. Brinckerhoff, Esq.

**Wolf Haldenstein Adler Freeman & Herz, LLP**
270 Madison Avenue
New York 10016
By:    Jeffrey G. Smith, Esq.

**For the Defendants:**

**Lorna B. Goodman**
**Nassau County Attorney**
One West Street
Mineola, New York 11501
By:   Dennis J. Saffran, Esq.
        Liora Ben-Sorek, Esq.

**HURLEY, Senior District Judge:**

Following remand by the Second Circuit, *see In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006), this Court, by Order dated January 16, 2007, (1) certified for liability purposes a class consisting of "all persons arrested for misdemeanors or non-criminal offenses in Nassau County who thereafter were strip searched at the Nassau County Correctional Center pursuant to defendants' blanket policy, practice and custom which required that all arrestees be strip-searched upon admission to the facility, from May 10,1996 until and including June 1, 1999"; (2) appointed counsel for the class; and (3) granted summary judgment on liability for all strip searches upon admission to the facility against defendants Joseph Jablonsky and the County of Nassau and in favor of the certified class and each and every member thereof. Presently before the Court is Plaintiffs' application to certify the class as to Plaintiffs' entire claims, *i.e.*, to extend class certification to include damages. Defendants oppose the application on the grounds that the predominance test for class certification cannot be met because of the "highly variable and individualized damages" of the class members. As set forth in detail below, the Court finds that extending class certification to the entire claim is appropriate because questions common to class members predominate over any questions affecting only individual members and a class action is superior to other available methods for adjudicating this controversy. Accordingly, the application is granted.

## Background

The background of this action is set forth in the prior decisions of this Court as well as the Second Circuit's decision directing this Court to certify a class on liability and to consider

anew whether to certify a class as to damages as well. Familiarity with those decisions is presumed. It suffices to note that these consolidated actions seek damages due to the blanket policy of the Nassau County Correction Center ("NCCC") of strip searching newly admitted, misdemeanor detainees. Said policy was declared to violate clearly established Fourth Amendment law in *Shain v. Ellison*, 53 F. Supp. 2d 564 (E.D.N.Y. 1999), *aff'd in part, remanded in part*, 273 F.3d 56 (2d Cir. 2001).

## Discussion

### *I. Class Certification Generally*

Class action certification is governed by Federal Rule of Civil Procedure 23. Class certification may be granted only if the court "is satisfied after a 'rigorous analysis' that the prerequisites of Rule 23 have been satisfied." *In re Initial Public Offering Sec. Litig.*, 471 F.3d 24, 32 (2d Cir. 2006), *clarified on denial of rehear'g*, 483 F.3d 70 (2d Cir. 2007) (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982)). The following standard governs class certification motions in the Second Circuit:

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to

> circumscribe both the extent of discovery concerning Rule 23
> requirements and the extent of a hearing to determine whether such
> requirements are met in order to assure that a class certification
> motion does not become a pretext for a partial trial of the merits.

*Id*.

A moving party must satisfy all four prerequisites to certification contained in Rule 23(a). Additionally, the class must be maintainable as defined in Rule 23(b). This Court has already found that Rule 23(a)'s requirements of numerosity, commonality, typicality and adequacy have been met in this case.

Turning then to Rule 23(b), it is subsection 3 on which these Plaintiffs rely. Under Rule 23(b)(3), a class action may be maintained if:

> (3) the court finds that the questions of law or fact common to the
> members of the class predominate over any questions affecting only individual
> members, and that a class action is superior to other available methods for the fair
> and efficient adjudication of the controversy. . . .

Fed. R. Civ. P. 23(b)(3).

For a class to be certified under Rule 23(b)(3), Plaintiffs must demonstrate both (1) that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## II. The Requirements of Rule 23(b)(3) Have Been Met

### A. Rule 23(b)(3) Generally

The predominance and superiority requirements of Rule 23(b)(3) "ensure that the class will be certified only when it would 'achieve economies of time, effort and expenses and promote . . . uniformity of decision as to persons similarly situated, without sacrificing

procedural fairness or bringing about other undesirable results.'" *Cordes & Co. Fin. Servs. Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007) (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (ellipses in original)).

"To meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 136 (2d Cir. 2001) (quotation marks and citation omitted). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir. 2002), and "all factual or legal issues that are common to the class inform the analysis." *Nassau County Strip Search Cases,* 461 F.3d at 227. "[A]n issue is common to the class when it is susceptible to generalized, class-wide proof." *Id.* "The Rule 'encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3) adv. comm. n. to 1966 amend.).

### B. The Contention of the Parties

In their initial submission following remand by the Second Circuit, Plaintiffs argued that the class certification should include damages so that damages can de determined on a class wide basis. Plaintiffs suggested several "models" whereby damages could be determined class wide. Two of the models were settlement models previously rejected by this Court. Another model

5

was one that was discontinued when it proved too cumbersome, leading to decertification of the class before damages were determined. *See Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 758 (4th Cir. 1998). The final model was one that the appellate court conceded was "unorthodox" and raised serious due process concerns but was justified by the extraordinarily unusual nature of the case. *See Hilao v. Estate of Marcos*, 103 F.3d 767, 782-87 (9th Cir. 1996).

In response to queries by this Court, Plaintiffs have refined their position. Plaintiffs maintain that the injury to human dignity is common to the class in its scope, nature, cause and harm suffered. They assert that "[t]he amount recoverable for this injury does not depend on the characteristics of each individual; rather the injury to human dignity suffered by each plaintiff, and resulting right to compensatory damages for such injury, redound to each plaintiff in the same manner because of his or her humanity." Pls.' Mem. in Further Supp. of Cert. of a Damages Class Pursuant to Court's May 30, 2007 Order ("Pls.' Supp. Mem.") at 2. It is further argued that the injury to human dignity is inextricably intertwined in the nature of the unlawful act at issue - the strip search - and therefore certain damages can be presumed such that there are sufficient commonalities as to damages to support a finding of predominance. *Id.*[1] Defendants respond that presumed or general damages are granted only in limited, individual situations and the award of presumed or general damages in a class action is unprecedented and was, in fact, implicitly rejected by the Second Circuit in the context of a strip search in *Shain v. Ellison*, 273

---

[1] With respect to those class members that may have suffered special damages, Plaintiffs are unwilling to concede at this point that such damages may not be common. They maintain the Court should find predominance in the damages for human dignity issue and await discovery before determining how to handle any claims of special damages.

F.3d 56, 67 (2d Cir. 2001). Defs.' Supp. Mem. Pursuant to Court's May 30, 2007 Order in Opp. to Cert. of a Damages Class ("Defs.' Supp. Mem.") at 2.

### C. The Issue of General Damages for Dignity Harm Predominates

In *Carey v. Piphus*, 435 U.S. 247 (1978) and *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299 (1986), the Supreme Court established the basic parameters for awarding compensatory damages in Section 1983 actions. The Court in *Carey* held, in a case involving procedural due process, that it is inappropriate to permit "presumed damages." Rather, the purpose of damages awards in § 1983 actions is to compensate for actual injury. In the absence of proof of actual injury, students wrongfully suspended from school in violation of procedural due process were entitled only to nominal damages and not unspecified damages to compensate them for injury inherent in the nature of the wrong. 435 U.S. at 252-55. In *Memphis Community*, the Court reiterated that when "§ 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." 477 U.S. at 306. To that end, "damages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages in [§ 1983] cases" and "nominal damages, and not damages based on some undefinable 'value' of infringed rights, are the appropriate means of vindicating rights whose deprivation has not caused actual, provable injury." *Id.* at 308 & n.11, 310. Whether the constitutional basis for § 1983 liability is substantive or procedural, "damages must always be designed to compensate for the constitutional deprivation." *Id.* at 309.

The Court in *Memphis Community* did, however, distinguish between damages based on the value of the constitutional right violated and presumed damages. The Court stated: "When a

7

plaintiff seeks compensation for an injury that is likely to have occurred but difficult to establish, some form of presumed damages may possibly be appropriate. . . . In those circumstances presumed damages may roughly approximate the harm that the plaintiff suffered and thereby compensate for harms that may be impossible to measure." *Id.* at 311 (citations omitted).

Here, the Plaintiffs are not claiming damages based on the value of their Fourth Amendment right to be free from unreasonable searches and seizures. Such a claim is foreclosed by *Carey* and *Memphis Community*. Plaintiffs maintain that once an illegal strip search is shown to have taken place, *a fortiori* there is injury to human dignity. This position finds support in the Second Circuit's decision in *Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004).

In *Kerman,* a jury found that the plaintiff's fourth amendment rights were violated by his unjustified detention in a psychiatric hospital overnight but awarded him only nominal damages of one dollar. The trial court denied the motion of the plaintiff, Kerman, for a new trial as to damages on his fourth amendment claims and Kerman appealed. The Second Circuit reversed, holding that while Kerman was not entitled to a new trial with respect to damages for his claimed physical pain, mental suffering and medical expenses, he should have been granted a new trial with respect to damages for his loss of liberty. *Id.* at 122.

The Second Circuit began its damages discussion by noting that a plaintiff is not automatically entitled to a substantial damages award because he has been deprived of a constitutional right. For example, "when a jury has found that the plaintiff proved a defendant used excessive force against him in violation of his rights under the Fourth or Fifth Amendment, a verdict that the plaintiff is not entitled to compensatory damages is not necessarily

8

impermissible. A jury could reasonably find that only nominal damages are appropriate where for example, a plaintiff's testimony as to his injuries lacks objective support or credibility, or where both justified force and unjustified force were used, either of which could have caused his injuries . . . ." *Id.* at 123. Applying these principles to the case before it, the *Kerman* court concluded that the jury was not required to credit the testimony regarding Kerman's mental suffering and psychological injuries and therefore he was not entitled as a matter of law to compensatory damages for his claims of physical pain, medical expenses, emotional suffering and psychological injuries. *Id.* at 124.

The Court then turned to Kerman's damages claim for his loss of liberty and distinguished it from his other damages claims. "In contrast, where the jury has found a constitutional violation and there is no genuine dispute that the violation resulted in some injury to the plaintiff, the plaintiff is entitled to an award of compensatory damages as a matter of law." *Id.* The Court noted that in *Raysor v. Port Authority*, 768 F.2d 34, 38-39 (2d Cir. 1985) "where the plaintiff was indisputably deprived of his liberty, and the conduct of the defendant responsible for the deprivation was found to be unlawful, [it has] held that the plaintiff is entitled to compensatory, not merely nominal, damages." The Court continued:

> *Raysor* is consistent with traditional common-law principles governing entitlement to damages for the tort of false imprisonment. That tort 'is complete with even a brief restraint of the plaintiff's freedom; it is not necessary that any damages result from it other than the confinement itself. . . . The compensatory damages that may be awarded for false imprisonment fall into two categories: general damages and special damages. . . . General damage is a harm of a sort inseparable from the unlawful restraint. . . . For false imprisonment, upon pleading and proving merely the unlawful interference with his liberty, the plaintiff is entitled to general damages for loss of time and humiliation or mental

9

> suffering. . . . Items of special damage [, on the other hand,] commonly include physical discomfort, shock or injury to health, loss of employment and injury to the plaintiff's reputation or credit and must be specifically pleaded and proven. . . . In contrast general damage need not be specifically proved - it may be inferred from the circumstances of the arrest or imprisonment and would include at least the value of the time lost by the plaintiff during the period of detention.

374 F.3d at 125 (internal quotations and citations omitted). Because the jury was not instructed that if they found the defendant had acted without probable cause Kerman was entitled to compensatory damages for his loss of liberty, a new trial was necessary. *Id.* at 129. *Accord Gardner v. Federated Dept. Stores, Inc.,* 907 F.2d 1348 (2d Cir.1990) (upholding separate damages awards for (1) general damages for deprivation of liberty, redressing the denial of free movement and the violation done to the plaintiff's dignity as a result of the unlawful detention, and (2) special damages for pain and suffering from the resultant anxiety disorder).

Here, it cannot be disputed that the violation at issue - the strip search - resulted in some injury to the class members. As Plaintiffs aptly state:

> The language used in cases to describe unlawful strip searches captures the intuitive understanding of the harm necessarily caused by such searches. The intrusion caused by a strip search is so great that objection to it is "instinctive." *See Bell v. Wolfish*, 411 U.S. 520, 528 (1979) (strip-search with visual inspection is the practice that "instinctively" gives "the most pause"). Strip-searches have been variously characterized as "a serious impairment of privacy" and a "serious intrusion." *N.G. v. Connecticut*, 382 F.3d 225, 234 (2d Cir. 2004); "uniquely invasive and upsetting," *id.* at 239 (Sotomayor, J., dissenting); and "demeaning," "dehumanizing" and "terrifying," *MaryBeth G. v. City of Chicago*, 723 F.2d 1263, 1272 (7th Cir. 1983). *See Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986) (describing strip/body cavity searches as "so intrusive and demeaning"); *Doe v. Renfrow*, 631 F.2d 91, 93 (7th Cir. 1980) (per curiam) (unlawful strip search violated "any known principle of human decency" and "exceed[ed]

> the 'bounds of reason' by two and a half country miles").
> . . . In *Tinetti v. Wittke*, 479 F. Supp. 486, 489 (E.D. Wisc. 1979), the district court observed that as to visual strip search "[w]hile the total time involved in a strip search is minimal, the humiliation and embarrassment experienced by the offenders are much more lasting," and described a strip search as being "an intrusion on one's personal dignity," *id.* at 490. Notably, most of these descriptions of the violative quality of unlawful strip searches were offered without specific references to the plaintiffs' testimony about their experiences; rather, the courts spoke to the common nature of the harm caused by strip searches.

Pls.' Supp. Mem at 8-9. At the very least, class members are entitled to general damages.

Defendants maintain that the Second Circuit's decision in *Shain v. Ellison*, 273 F.3d 56, approving the award of nominal damages, is an implicit rejection of the argument that the victim of an unlawful strip search is entitled to general damages for injury to human dignity. The Court disagrees. There is no indication in *Shain* that the parties raised, or that the Second Circuit considered, whether the plaintiff was entitled to general damages for the unlawful strip search. Rather, the question was whether that plaintiff was entitled to special damages and as to that question the Court found that the evidence was insufficient and therefore a nominal damage award was appropriate. Id. at 67. *Shain* does not bar general damages for unlawful strip searches.

Nor is the Court persuaded by Defendants' argument that even if general damages are awardable in a strip search case there is no reason to believe that the rule would be extended to class actions. The Second Circuit has recognized, for example, that class-wide rather than individual assessments of monetary relief may sometimes be appropriate in class discrimination cases. *See Robinson v. Metro-North*, 267 F.3d 147, 161 n. 6 (2d Cir. 2001). *See also Berger v. Iron Workers Reinforced Rodmen, Local 201*, 170 F.3d 1111, 1138 (D.C. Cir. 1999) (holding

11

that it was appropriate to presume that as a result of race discrimination those class members who were experienced rodmen suffered emotional distress by having to subject themselves to an unnecessary training program for up to two years before being permitted to take union entrance exam and therefore damages award was supported and appropriate). Moreover, "[p]roof of aggregate monetary relief for [a] class is feasible and reasonable under various circumstance." 3 Newburg on Class Actions § 10:2. As the authors of one noted treatise have stated: "In situations when aggregate proof of damages is sought to be proved on behalf of a class, no special or unique rules of evidence are involved; nor are any special substantive principles invoked; nor is defendant's monetary liability increased at all from what it would be if all class members individually proved their monetary claims. Courts have approved various methods of discovery and determining damages in class actions on the basis of classwide, rather than individualized proof of damages and the use of statistics and representative samples are one such method." *Id.* Finally, the Second Circuit has noted that those cases in which plaintiffs are "aggrieved by a single policy of the defendants" and there is a "strong commonality of the violation and the harm" are "precisely the type of situation[s] for which the class action device is suited." *In re Visa Check*, 280 F.3d at 146. Here, class members were aggrieved by a single, admittedly unlawful policy and there is a strong commonality between the strip search violation and the harm. There is no reason that a jury in this case, hearing the procedures used by Defendants for strip searches together with the testimony of a number of class members as to the circumstance of actual searches, could not determine an amount of general damages awardable to each member of the class. Concededly, care would have to be taken to ensure that the amount awarded for general damages excludes all elements of special damages that individual class member might

then pursue. But the task, albeit difficult, is doable.

In sum, the Court determines that the issue of general damages is predominate.

**D. The Requirement of Superiority Has Been Met**

Rule 23(b)(3) requires a court to consider whether a class action is superior to other methods of adjudication. To that end the court should examine "the interest of members of the class in individually controlling the prosecution or defense of separate actions;" "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;" "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and "the difficulties likely to be encountered in the management of the class." Fed. R. Civ. P. 23(b)(3). All these factors favor certification in this case.

Given that liability is established and the issue of general damages predominates, concentrating the litigation in one forum will simplify and streamline the litigation process. As a practicable matter, neither joinder nor intervention is a realistic alternative. It would appear that members of the class have little interest in individually controlling separate actions as the Court has not been advised by the parties that any individual suits have been filed despite the amount of time that has passed since this action was commenced. The Court finds that Plaintiff have satisfied the superiority requirement.

**Conclusion**

For the reasons set forth herein, Plaintiffs' motion to extend class certification to include damages is hereby granted. It should be noted that Plaintiffs are not asking this Court to select a particular damages model or to certify any subclasses for special damages as to do so would be "premature." Thus, the Court has neither selected nor foreclosed any particular damages model;

nor has it gone beyond determining that the predominancy of general damages warrants extending class certification from solely liability to liability and damages.

Plaintiffs shall submit a proposed order on notice within ten (10) days of the date hereof. The parties shall appear for a conference on May 9, 2008 at 2:00 p.m.

**SO ORDERED.**

Dated: Central Islip, New York
March 27, 2008

/s/_____
Denis R. Hurley
Senior District Judge