```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
                                                    MEMORANDUM AND ORDER
                                                    99-CV-3126(DRH)
In re NASSAU COUNTY STRIP                           99-CV-2844(DRH)
SEARCH CASES                                        99-CV-4238(DRH)

---------------------------------------------------X
```

**APPEARANCES**:

**For Plaintiffs**:
    Beldock Levine & Hoffman LLP
    99 Park Avenue, Suite 1600
    New York, New York 10016
      By:   Robert L. Herbst, Esq.
            Jonathan C. Moore, Esq.
            Vera M. Scanlon, Esq.

    Emery Celli Brinckerhoff & Abady LLP
    75 Rockefeller Plaza, 20th Floor
    New York, New York 10019
      By:   Matthew D. Brinckerhoff, Esq.

    Wolf Haldenstein Adler Freeman & Herz, LLP
    270 Madison Avenue
    New York, New York 10016
      By:   Jeffrey G. Smith, Esq.

**For Defendants**:
    Lorna B. Goodman
    Nassau County Attorney
    One West Street
    Mineola, New York 11501
      By:   Dennis J. Saffran, Esq.
            Liora Ben-Sorek, Esq.

**HURLEY, Senior District Judge**:

       The captioned case is scheduled for trial beginning on September 8, 2009. The subject of that trial will be the general damages sustained by class members as a result of being strip

searched at the Nassau County Correctional Center following their arrest for non-criminal offenses and/or misdemeanors. See Court's Mar. 27, 2008 Mem. and Order. On March 11, 2009, the Court held a conference with the parties, inter alia, to discuss certain issues relating to the conduct of the trial that had been raised by the parties in correspondence to the Court. By Memorandum and Order dated March 16, 2009 (the "Order"), the Court issued its ruling with respect to the trial procedures issue discussed on March 11, 2009. Presently before the Court is Plaintiffs' motion for reconsideration of that portion of the Court's Order that held that "each party will be able to call up to ten fact witnesses from the class, which witnesses will testify solely concerning the details of the search without any information concerning the effect that the search had upon them." (Order at 6.) Plaintiffs seek modification of the Order to allow witnesses to testify as to the effect the search had on them at the time it was conducted, with testimony about subsequent emotional effects on them to be reserved for later trial. For the reasons set forth below, the motion is denied.

The decision to grant or deny a motion for reconsideration lies squarely within the discretion of the district court. *See Devlin v. Transp. Comm'ns Union,* 175 F.3d 121, 132 (2d Cir. 1999). The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (finding district court properly exercised its discretion to reconsider earlier ruling in light of the introduction of additional relevant case law and substantial legislative history); *see also Arum v.*

*Miller*, 304 F. Supp. 2d 344, 347 (E.D.N.Y. 2003) ("To grant such a motion the Court must find that it overlooked matters or controlling decisions which, if considered by the Court, would have mandated a different result.") (citation and internal quotation marks omitted). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790). Thus, a "'party may not advance new facts, issues, or arguments not previously presented to the Court.'" *National Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, No. 97 Civ. 690, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)).

In the present case, no grounds exist for the Court to exercise its discretion to grant reconsideration. Plaintiffs point to no controlling decisions or data that the Court overlooked. Indeed, the very issue raised by the Plaintiffs' current motion was extensively discussed at the pre-trial conference on March 11, 2009, prior to the Court's issuance of the Order.

With regard to the scope of the testimony by class members, the Court began the discussion at the March 11 conference by stating: "In view of the fact that this is somewhat unchartered territory, I want to give you some of my preliminary thoughts to invite discussion and comment, and I think through that process, when all the dust settles, we'll come up with a fair way to conduct this particular part of the proceeding." Transcript of March 11, 2009 ("Tr.") at 27. The Court began by reviewing its decision concerning the question of certifying a class for damages purposes. Noting that with respect to the issue of general damages it was imperative

to proceed with caution, the Court stated "we have to be careful to have a clear line of demarcation so that the jury that hears this general damages aspect of the case associated with the injury to personal dignity considers solely that issue, and they do not address items of special damages which we'll address in a moment." (Tr. 30.) With reference to the line of demarcation, the Court discussed the Second Circuit's decision in *Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004), noting that *Kerman* court indicated that "claimed physical pain, mental suffering, humiliation, psychological deterioration, and medical expenses" fell within the ambit of special damages, whereas "damages for loss of liberty" fell within the ambit of general damages. (Tr. 31, 36.)

The Court then went on to discuss where the line of demarcation in the present case should be drawn, indicating its preliminary inclination that class member witnesses should be limited in their testimony to the detail of the strip search such as when and where it occurred, who was present, and its duration. (Tr. at 32-33.)

Next, the Court discussed the ramifications of taking a broader view of where the line of demarcation should be drawn and allowing the witnesses to testify about the effect the search had on them: "[T]hat, to me, is probably not the right way to go. Firstly, it will tend to blur the distinction between special damages and general damages. That's the first problem. The second problem is that it makes the entire process more complicated because one of the things the defense has asked for [is some type of statistically representative group]." (Tr. 35.)

Having given its preliminary views on the matter, the Court then heard from counsel for the parties. Plaintiffs' counsel argued that the line of demarcation should be drawn so as to allow witnesses to testify as to their feeling of shame and humiliation and strongly opposed any use of a

statistically representative group. (Tr. 38- 44.) Defendants' counsel agreed with the line of demarcation described by the Court but argued that it was still necessary to have a random selection of plaintiffs. (Tr. 44-49.) The Court reserved decision on the matter.

Thereafter, on March 16, 2009, the Court issued its Order. In pertinent part, the Court stated:

> Items 2 [random selection] and 3 [scope of testimony] are intertwined. Which is to say, if the trial witnesses were permitted to testify concerning the humiliation and other effects that the strip search had upon them with the thought that such information would assist the trier of fact in determining a single dollar amount of general damages for each class member, then I believe the use of a random selection process to create a pool from which witnesses would be called would be the appropriate way to proceed. Otherwise, the amount determined by the jury would be less likely to be representative of the general damage sustained by each member of the class, given that, if provided a choice, plaintiffs' counsel surely, and legitimately so, would call to the stand those plaintiffs among the 17,000 plus class members they believed to be the most severely impacted from being strip searched. By excluding such specific impact evidence from this part of the proceeding, however, the problem of a non-representative per plaintiff amount being returned by the jury is essentially eliminated. Therefore, each party will be able to call up to ten fact witnesses from the class, which witnesses will testify solely concerning the details of the search without any information concerning the effect that the search had upon them. . . . This line of demarcation as to the parameters of permissible testimony will not negatively effect any individual plaintiff because to the extent such individual did sustain humiliation, embarrassment or emotional distress, those items may be pursued during the special damages portion of the proceeding which will be held before another jury. . . . Absent from their testimony, however, will be any references to the ultimate outcome vis a vis the charged conduct, and what effect, if any, the strip search had on them.

(Slip Op. at 5-6) (footnotes omitted) (citing Kerman v. City of New York, 374 F.3d 93, 122-23 (2d Cir. 2004; Raysor v. Port Authority, 768 F.2d 34, 39 (2d Cir. 1985)).

Nothing presented in the present application suggests that the Court overlooked controlling authority or data. As the Court discussed both at the March 11 conference and in its Order, if class member witnesses were allowed to testify as to the effect of the search upon them then those witnesses should be selected via random sampling (a process, as noted earlier, Plaintiffs oppose) lest the import of the evidence be skewed by each side calling the allotted number of witnesses from the polar ends of the spectrum. Moreover, such testimony would contravene the demarcation between special and general damages drawn by the Second Circuit in *Kerman* and *Raysor*. *See also Gardner v. Federated Dept. Stores, Inc.*, 907 F.2d 1348,1353 (2d Cir. 1990) (noting that jury in unlawful detention case rendered separate awards for deprivation of liberty and pain and suffering, with "damages for deprivation of liberty redress[ing] the denial of free movement and violation to [plaintiff's] dignity . . . , and not the physical and mental injuries arising from the incident"). Finally, how a strip search effects one's emotions such as shame and humiliation is individual in nature. The Court certified the damages class based on the common injury to human dignity inherent in a strip search and to allow the testimony suggested by Plaintiffs would call into question the predominance requirement of Rule 23 of the Federal Rules of Civil Procedure. Indeed, Plaintiffs' current position is at odds with their position on the motion for certification of a damages class where they argued that the injury to human dignity is common to the class in its scope, nature, cause and harm suffered: "[t]he amount recoverable for this injury does not depend on the characteristics of each individual; rather the injury to human dignity suffered by each plaintiff, and resulting right to compensatory damages for such injury, redound to each plaintiff in the same manner because of his or her humanity." (Pls.' Mem. in Further Supp. of Cert. of a Damages Class Pursuant to Court's May

30, 2007 Order at 2.)

The motion for reconsideration is denied.

Dated: Central Islip, New York
      May 11, 2009

/s/_____
Denis R. Hurley
Senior District Judge