UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X

**MEMORANDUM & ORDER**

In re NASSAU COUNTY STRIP                          99-CV-2844(DRH)
SEARCH CASES

-------------------------------X

**APPEARANCES**:

**For Plaintiffs**:
    Giskan Solotaroff Anderson & Stewart LLP
    11 Broadway suite 2150
    New York, New York 10004
    By:    Robert L. Herbst, Esq.
           Oren Giskan, Esq.

    Beldock Levine & Hoffman LLP
    99 Park Avenue, Suite 1600
    New York, New York 10016
    By:    Vera M. Scanlon, Esq.

    Emery Celli Brinckerhoff & Abady LLP
    75 Rockefeller Plaza, 20th Floor
    New York, New York 10019
    By:    Matthew D. Brinckerhoff, Esq.
           Mariann Wang, Esq.

    Wolf Haldenstein Adler Freeman & Herz, LLP
    270 Madison Avenue
    New York, New York 10016
    By:    Jeffrey G. Smith, Esq.
           Martin Restituyo, Esq.

**For Defendants**:
    Lorna B. Goodman
    Nassau County Attorney
    One West Street
    Mineola, New York 11501
    By:    Dennis J. Saffran, Esq.
           Christine Sullivan, Esq.
           Liora Ben-Sorek, Esq.

**HURLEY, Senior District Judge:**

The purpose of this memorandum is to address the issue of "book and bail" detainees, a subject first broached by Defendants' letter dated November 2, 2009. By way of background, by Order dated January 16, 2007, this Court (1) certified for liability purposes a class consisting of "all persons arrested for misdemeanors or non-criminal offenses in Nassau County who thereafter were strip searched at the Nassau County Correctional Center pursuant to defendants' blanket policy, practice and custom which required that all arrestees be strip-searched upon admission to the facility, from May 10,1996 until and including June 1, 1999"; (2) appointed counsel for the class; and (3) granted summary judgment on liability for all strip searches upon admission to the facility against defendants Joseph Jablonsky and the County of Nassau and in favor of the certified class and each and every member thereof. By Order dated, May 1, 2008, the Court certified the same class for purposes of damages.

In order to begin identifying class members so that notice to the class could be sent, Defendants provided to Plaintiffs a computerized database of inmates apparently meeting the class criteria, using the search criteria of "[a]ll individuals processed into the jail within the class period who were not charged with a felony offense." (Dkt. No. 276 at 3 & n.4.) In their letter of November 2, 2009 (Dkt. No. 260), Defendants raised the specter that the computerized database was over-inclusive as it contained the names of numerous individuals who are not class members as they were never strip searched. According to Defendants, "[t]his situation arises because some arrestees are so called 'book and bails' whose bail is posted shortly after arraignment and therefore merely booked at the jail and then discharged

without being strip searched. These 'book and bail' arrestees in turn fall into two categories: (1) those whose bail has already been paid or is in the process of being paid upon their arrival at the jail after being arraigned; and, (2) those whose bail is paid during the jail admission process." (Dkt. No. 260 at 2.) Defendants maintain that a comparison of the database of inmates with the jail's computerized intake records reveals 721 "book and bail" inmates of the first category. Because the second group's bail was not paid at the time of the booking and computer entry, there is no book and bail notation in the jail's computerized records. (*Id.* at 2.) Rather, "the inmate's paperwork is brought into the clothing room to prepare the clothing room log book and clothing bag in the event that bail is not paid. When bail is paid, an entry into the clothing room log book of 'Book and Bail,' or 'B&B' is made or there is an absence of any notation or time in the time column which indicates that the individual was not processed in the clothing room (i.e., not searched)." (Dkt No. 304-1 ¶ 14.)

In response, Plaintiffs argue that there is "no way to determine accurately and reliably which admittees were strip searched and which were not upon their admission or return to the jail after bail had been posted, or was in the process of being posted." (Dkt. No. 274 at 4.) Plaintiffs attack the jail records as "utterly unreliable reeds on which to base the wholesale exclusion of an unspecified number of class members who, according to the County[] . . . could number in the thousands." (*Id.*) They maintain that "the Court should reject the county's belated effort to cut down the size of the class which it has already identified by providing its database of class members and by consenting to notice of class member status being mailed to each and every class member on that database list, to whom it had already

conceded liability. . . . [T] he issue has been waived." (*Id.* at 6.)

Addressing first the issue of waiver, the Court concludes that Defendants have not waived the book and bail issue. By Order dated January 16, 2007, this Court certified a liability class consisting of "all persons arrested for misdemeanor or non-criminal offenses in Nassau County who thereafter were strip searched at the Nassau County Correctional Center pursuant to defendants' blanket policy . . . from May 20, 1996 until and including June 1, 1999." (Dkt. No. 54-3 at 2.) Further, the Court granted summary judgment on liability in favor of "the certified class and each and every member thereof." (*Id.*) The Court did not certify a class consisting of persons listed on a data base and it did not grant summary judgment on liability in favor of persons listed on a database. Nor did the Defendants' necessarily represent that all persons listed on the database were strip searched. Indeed, at a conference held on November 28, 2006, Defendants represented, in response to a query by the Court about the availability of the names and addresses of class members, that "[t]he jail has a database of individuals who are housed or incarcerated at the facility and it would [be] a task to tie into the relevant ones which [Plaintiffs' counsel] has indicated is approximately 25,000." (Nov. 28, 2006 Tr. at 21.) Finally, Defendants' consent to the notice to class members cannot be deemed a waiver. Nothing in that notice definitely informs the recipient that they are a member of the class. Rather, according to the notice, "[it] provides . . . important information regarding your legal rights **if** you fit within the definition of the class . . . ." (Dkt. No. 164-1 at 1 (emphasis added).) The notice consistently uses qualifying language such as "if you were arrested . . . and were strip searched," (*id.* ¶ 11), and "[i]f you are a class

member," (*id.* ¶ 15; *see also id.* ¶¶ 12, 13 & 14).  In the final analysis only those individuals who fall within the class definition, including the strip search requirement, will be considered by the Court in determining the general damage issue, i.e., the amount to be awarded per search for the injury to human dignity.

Having determined that the issue of "book and bail" has not been waived, the question becomes how to proceed.  Defendants seem to suggest that those 721 inmates falling in what they term the first category, i.e., inmates for whom the jail's computerized records list "book and bail" in the remarks screen and /or are assigned to a  fictitious housing designation D01A, should automatically excluded from the class.  As to the second category of book and bails, Defendants contend that to the extent jail log books identify an individual  as "B&B" or a similar entry or for whom no clothing room time is listed, these records should be deemed "presumptive proof that an individual wasn't strip searched upon admission to [the Nassau jail] and thus not entitled to claim any damages award.  However, if there are specific instances that plaintiffs allege a new admit strip search took place, or if the court would like further proof, a review of hard copy files could be conducted", which hard copy files are in the contaminated trailers.  (Dkt No. 304 at 6-7.)  "[A]n alternative to searching the individual files of those plaintiffs who insist they were searched . . . could be to conduct mini-hearings to determine the individuals' credibility."  (*Id.*)

Defendants are directed to commence forthwith assembling the book and bail documentation under their control (whether in contaminated trailers or otherwise), rather than

delay matters further, and should be prepared to come forward in the first instance at least[1]

with information pertaining to the book and bail arrestees which they claim should be

deducted from the previously furnished computerized database.  Plaintiffs are entitled to

discovery on the issue, which also should be commenced with due dispatch subject to

oversight, if needed, by Magistrate Judge Lindsay.

To the extent counsel for Plaintiffs and/or Defendants believe an in-court conference

with the Court would be beneficial to expedite or clarify matters, they may make such a

request by letter and the matter will be added to the Court's calendar.

**SO ORDERED.**

Dated: Central Islip, New York
February 25, 2010

/s/
Denis R. Hurley
Senior District Judge

---

[1] If Plaintiffs maintain that the ultimate burden of proof as to the Book and Bail arrestees, rather than the burden of coming forward, should rest with Defendants, they should serve and file a letter brief, citing appropriate authority, on or before April 2, 2010.  Defendants may then serve and file a reply letter brief on or before April 9, 2010.