UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X

**MEMORANDUM & ORDER**

In re NASSAU COUNTY STRIP  99-CV-2844
SEARCH CASES  (DRH)

---------------------------------------------------X

**APPEARANCES**:

**For Plaintiffs**:
    Giskan Solotaroff Anderson & Stewart LLP
    11 Broadway Suite 2150
    New York, New York 10004
    By:    Robert L. Herbst, Esq.
            Oren Giskan, Esq.

    Beldock Levine & Hoffman LLP
    99 Park Avenue, Suite 1600
    New York, New York 10016
    By:    Vera M. Scanlon, Esq.

    Emery Celli Brinckerhoff & Abady LLP
    75 Rockefeller Plaza, 20th Floor
    New York, New York 10019
    By:    Matthew D. Brinckerhoff, Esq.
            Mariann Wang, Esq.

    Wolf Haldenstein Adler Freeman & Herz, LLP
    270 Madison Avenue
    New York, New York 10016
    By:    Jeffrey G. Smith, Esq.
            Martin Restituyo, Esq.

**For Defendants**:
    Lorna B. Goodman
    Nassau County Attorney
    One West Street
    Mineola, New York 11501
    By:    Dennis J. Saffran, Esq.
            Christine Sullivan, Esq.
            Gerald Waters, Esq.
            Lisa Ross, Esq.

**HURLEY, Senior District Judge:**

The purpose of this memorandum is to address the applicability of the recovery limitation of the Prison Litigation Reform Act of 1997 ("PLRA"), 42 U.S.C. § 1997e(e) to the present case,[1] a class action consisting of "all persons arrested for misdemeanors or non-criminal offenses in Nassau County who thereafter were strip searched at the Nassau County Correctional Center [NCCC] pursuant to defendants' blanket policy, practice and custom which required that all arrestees be strip-searched upon admission to the facility, from May 10,1996 until and including June 1, 1999." (Jan. 16, 2007 Order at 2.)

## Background

A history, albeit abbreviated, of the instant action is in order.

These consolidated actions were commenced in 1999 seeking damages due to the blanket policy of the NCCC of strip searching newly admitted, misdemeanor detainees. Extensive pretrial motion practice ensued, including numerous attempts to achieve class certification. In response thereto, defendants conceded liability, acknowledging that the strip searches of the class members for non-felony offenses were conducted - with a few possible exceptions - absent reasonable suspicion to believe that such arrestees had contraband on their persons upon admission to the facility. Based on that concession, this Court deleted liability from the certification analysis and denied class treatment. On appeal, the Second Circuit reversed and directed this Court "to certify a class on the issue of liability . . . and consider anew whether to certify a class as to damages as well." *In re Nassau County Stip Search Cases*, 461 F.3d 219,

---

[1] By Memorandum and Order dated November 19, 2009, the Court held that defendants had waived any affirmative defense of exhaustion under the PLRA.

231 (2d Cir. 2006). Accordingly, the Court certified a class as to liability, entered summary judgment on liability in favor of the class and each of its members (Jan. 16, 2007 Order at 2), and sought input from the parties concerning damages certification. As a result of that input, the Court concluded that the general damages sustained by each class member attributable to the affront to human dignity necessarily entailed in being illegally strip searched satisfied the predominance requirement of Fed. R. Civ. P. 23(b)(3) and thus extended class certification to include damages. (*See* Memorandum and Order dated March 27, 2008 reported at 2008 WL 850268). A non-jury trial[2] on the issue of general damages sustained by class members as a result of being unconstitutionally strip searched at the NCCC was held in November and December 2009, with post trial briefing thereon completed in April 2010; that matter is the subject of a separate Memorandum and Order being issued this date.

## The PLRA's Limitation on Recovery

The PLRA provides in pertinent part:

> (e) Limitation on recovery
> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e)[3].

---

[2] The parties waived the right to a jury trial on the issue of general damages.

[3] The PLRA defines a prisoner as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. §1997e(h).

## The Parties' Contentions

Defendants maintain that 42 U.S.C. § 1997e(e) "limits the recovery by some or all of the plaintiff class to nominal and/or punitive damages as the general dignitary injury here is an emotional rather than a physical injury for PLRA purposes and plaintiffs have not alleged an accompanying <u>actual</u> physical injury." (Defs.' Brief on the Applicability of the Prison Reform Litigation Act ("Defs.' Br.") at 4 (emphasis in original).) More particularly, defendants urge this Court to hold that the PLRA's limitation on recovery applies whether or not plaintiffs were incarcerated or detained at the time these lawsuits were filed (*id.* at 11-14) and that the general damages attributable to the affront to human dignity are recompense for "mental or emotional" injuries requiring a showing of physical injury (*id.* at 5-11).

Plaintiffs counter that the PLRA's recovery limitation does not apply to individuals who are not incarcerated when the action is commenced and, as to class members that were incarcerated at that time, the limitation does not apply because the named plaintiffs were not then incarcerated. (Pls.' Memorandum in Opposition to Defs.' Motion Under the PLRA ("Pls.' Mem.") at 7-11.) Plaintiffs also argue that the PLRA does not limit class members' recovery of general damages because the general damages arising from the Fourth Amendment violation at issue are not mental or emotional damages (*id.* at 12-21) and, in any event, defendants have waived the PLRA's recovery limitation (*id.* at 27-30).

## Discussion

The Court shall proceed as follows in addressing the parties' contentions. First, the Court will determine whether defendants have waived the PLRA's limitation on recovery. Then it will

address whether the limitation on recovery applies whether or not a plaintiff is incarcerated[4] at the time the suit is commenced and whether the non-incarceration of the named plaintiffs at the time these actions were commenced[5] makes the limitation inapplicable to any class member who was incarcerated at that time. Finally, given the Court's ruling that the limitation is inapplicable to class members who may have been incarcerated at the time these consolidated actions were brought, it is unnecessary to address whether damages for the harm to human dignity fall within the purview of "mental or emotional" damages for PLRA purposes.

**I.    Defendants Have Not Waived the Limitation on Recovery**

Plaintiffs proffer that defendants have waived the PLRA's limitation on recovery because they "failed to raise the PLRA as an affirmative defense on the merits in their answer." (Pls.' Mem. at 27.) This argument fails for several reasons.

Whereas the PLRA's exhaustion requirement is an affirmative defense that can be waived, *see Handberry v. Thompson,* 446 F.3d 335, 342 (2d Cir. 2006); *Johnson v. Testman,* 380 F.3d 691, 695 (2d Cir. 2004), §1997e(e) is a limitation on recovery. Section 1997e(e) precludes recovery for "mental or emotional" damages absent a physical injury; it does not, however, limit the availability of other damages, including nominal and punitive damages. *Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002). Nor does it limit the availability of injunctive or declaratory

---

[4] The Court recognizes that the PLRA limits recovery in actions by "a prisoner confined *in a jail, prison, or other correctional facility,"* 42 U.S.C. § 1997e(e) (emphasis added), and not to prisoners confined in medical facilities or mental institutions, *see Perez v. Westchester Cnty Dept. of Corrections*, 587 F.3d 143, 155 (2d Cir. 2009). That distinction does not appear relevant for present purposes and therefore the Court shall simply refer to prisoner(s) or plaintiff(s) who are incarcerated.

[5] Defendants make no claim that any of the named plaintiffs were incarcerated at the time these actions were filed.

relief. *Id.* As §1997e(e) is a limitation on recovery and not an affirmative defense to liability, it need not be pled. *Cf. Harris v. City of New York*, 607 F.3d 18, 23 (2d Cir. 2010) (holding PLRA's three strike rule is not an affirmative defense that must be raised in pleadings). The case relied upon by plaintiffs, *Handberry v. Thompson*, 446 F.3d 335 (2d Cir. 2006), addresses the waiver of the PLRA's exhaustion requirement and not its limitation on recovery.

Assuming *arguendo* defendants were required to raise the limitation on recovery as an affirmative defense, they adequately did so. The answers filed by defendants in each of the three actions comprising the instant consolidated action contain the following "defense": "The purported class action cannot be certified because to do so would violate [the PLRA's] prohibition on actions brought "for mental or emotional injury suffered while in custody without a showing of physical injury." While plaintiffs maintain that defendants only raised §1997e(e) "as objections to the certification of the putative class, not as defenses to the merits of the claims" (Pls.' Mem. at 27), the Court declines to read the defense so narrowly in view of the requirement that "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). Moreover, defendants' framing of the recovery limitation in terms of class certification makes sense to the extent that the limitation applies only to plaintiffs incarcerated at the time an action is commenced and none of the named plaintiffs were incarcerated at that time. In other words, as none of the named plaintiffs were incarcerated at filing, the limitation on recovery was potentially applicable only to unnamed class members. In sum, defendants' pleadings were sufficient to put plaintiffs on notice of their reliance on the PLRA's limitation on recovery.

Plaintiffs also maintain that defendants' concession of liability was a specific waiver of any PLRA defenses. They reason that "Defendants' concession of liability is a concession that

they caused plaintiffs injury for which they are liable and that they owe plaintiffs a recovery. The only question at issue in this trial is what the amount of damages is, not whether plaintiffs are entitled to recover for them. In conceding liability without reserving any PLRA defense, defendants waived it as a limitation of recovery." (Pls.' Mem. at 28.)

Defendants, in opposition to a motion for class certification, conceded the unconstitutionality of NCCC's strip search policy whereby all persons arrested for misdemeanors or non-criminal offenses in Nassau County were strip searched, which concession the Court read as a concession of liability. *See, e.g.*, Memorandum and Order dated Aug. 20, 2004 at 5. That concession did not address injury or the nature of any remedy. Indeed, it was long after that concession and indeed after certification on liability that the issue of general damages arose in connection with extending certification to damages. Defendants vehemently opposed damages certification and the class's claim to general damages; they have consistently maintained, albeit in this Court's view erroneously, that only nominal damages should be awarded. Section 1997e(e)'s limitation on recovery only extends to "mental or emotional" damages in the absence of physical injury; it does not limit the availability of other damages (e.g. nominal and punitive) in the absence of physical injury. *See Thompson*, 284 F.3d at 418. In the Court's view, §1997e(e)'s limitation on recovery is unaffected by the defendants' concession of liability.

In sum, defendants have not waived the PLRA's limitation on recovery.

## II. PLRA's Recovery Limitation Applies Only When a Plaintiff is Incarcerated at the Commencement of an Action

Having determined that defendants have not waived the PLRA's limitation on recovery, the Court now turns to the scope of that limitation, i.e. whether it applies to prisoners who are no

longer incarcerated at the commencement of an action or only to plaintiffs incarcerated at the time an action is filed. As set forth below, the plain language of § 1997e(e), the declared purpose of the PLRA, and the case law demonstrate that the limitation on recovery is inapplicable where a plaintiff is no longer incarcerated at the time an action is commenced.

The Court begins with the statutory language itself. It provides : "No Federal civil action *may be brought by a prisoner confined* in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1995e(a) (emphasis added). The statute has a temporal element that limits its language to lawsuits by prisoners confined at the initiation of the lawsuit and not lawsuits by those confined when the cause of action arose or at any other time. The plain language of § 1997e(e) limits it applicability to a prisoner confined at the time the action is "brought."

The purpose of the PLRA further supports this conclusion. That purpose is "to curtail what Congress perceived to be inmate abuses of the judicial process." *Ortiz v. McBride*, 380 F.3d 649, 658 (2d Cir. 2004). For example, one Senator commented that "[t]his legislation is a new and improved version of S. 866, which I introduced earlier this year to address the alarming explosion in the number of frivolous lawsuits filed by State and Federal prisoners." 141 Cong Rec S14413 (daily ed. Sept. 27, 1995). Another Senator who had sponsored an earlier version of the Bill, decried the proliferation of frivolous lawsuits by prison inmates, noting that "[f]iling frivolous civil rights lawsuits has become a recreational activity for long-term residents of our prisons." 141 Cong Rec S7526 (daily ed. May 25, 1995). That same Senator based the need for reform in part on the comment by Justice Rehnquist in his dissent in *Cleavinger v. Saxner*, where he observed, "With less to profitably occupy their time than potential litigants on the outside, and with a

justified feeling that they have much to gain and virtually nothing to lose, prisoners appear to be far more prolific litigants than other groups in the population." *Cleavinger*, 474 U.S. 193, 211 (1985) (Rehnquist, J., dissenting) (emphasis added). *See also* Hearing on S. 3 and S. 866 Before the Senate Committee on the Judiciary, 104th Cong., 1995 WL 496909 (F.D.C.H.) (July 27, 1995) (prepared statement of O. Lane McCotter, Exec. Dir., Utah Dept. of Corrections) ("The driving force behind this flood of litigations is that inmates have 'nothing to lose' in filing even the most frivolous case . . . ."). The purpose of the PLRA patently was to curb the litigiousness of prisoners presently in custody.

Finally, the case law dovetails with the statutory language and the legislative purpose underlying the enactment of § 1997e(e). Two courts of appeals have addressed the scope of the PLRA's recovery limitation and concluded that it does not apply to plaintiffs not incarcerated at the time the action is brought. In *Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000) (en banc), the Eleventh Circuit reviewed the statutory language and held that "[b]ecause section 1997e(e) applies only to claims filed while an inmate is confined, it does not prevent a former prisoner from filing after release a monetary damages claim for mental and emotional injury suffered while confined, without a prior showing of physical injury." *Id.* at 979-80. The Eleventh Circuit also reviewed the legislative history of the PLRA and found it supported the Court's determination: "Congress' deliberate decision to draw the confinement line-with plain and unequivocal language-where it did," *id*. at 979, served the "legislation's overriding goal" of precluding filings by confined prisoners who have little to lose by filing frivolous lawsuits. *Id*. at 978-79. In *Kerr v. Puckett*, 138 F.3d 321, 322-23 (7th Cir.1998), the Seventh Circuit similarly concluded that by the plain language of § 1997e(e) Congress intended to exclude the possibility "that 'prisoner' refers to

the plaintiff's status at the time of the injury rather than at the time the litigation begins." *Id.* at 323; *see id.* (finding that the "[t]he statutory language does not leave wriggle room" and holding that "by waiting until his release from prison [plaintiff] avoided § 1997e(e)."). *See also McBean v. City of New York*, 260 F.R.D. 120, 142-43 (S.D.N.Y. 2009); *Kelsey v. County of Schoharie*, 2005 WL 1972557, at *1-2 (N.D.N.Y. Aug. 5, 2005).

Although the Second Circuit has not squarely addressed the scope of the PLRA's recovery limitation, two of its decisions are instructive.

In *Greig v. Goord*, 169 F.3d 165 (2d Cir. 1999), the court held that litigants "who file prison condition actions after release from confinement are no longer 'prisoners' for purposes of . . . the exhaustion requirement [of the PLRA, 42 U.S.C. § 1997e(a)]. In reaching that conclusion, the court reasoned, in part:

> When introducing the PLRA, Senators Dole and Kyl justified treating prisoners differently from other litigants by stating that prisoners file frivolous lawsuits because filing lawsuits "has become a recreational activity for long-term residents of our prisons," because prisoners "have little to lose and everything to gain," and because filing frivolous complaints is "a means of gaining a short sabbatical in the nearest Federal courthouse." 141 Cong. Rec. S7524-26 (daily ed. May 25, 1995) (statements by Senators Dole and Kyl) (citations and internal quotation marks omitted). These justifications simply do not apply to individuals who were formerly incarcerated. *Cf. Doe v. Washington County*, 150 F.3d 920, 924 (8th Cir.1998) ("Congress ... fully intended to distinguish between those who are 'prisoners' when they decide whether to file a complaint and those who are not."); *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir.1998) ("[T]he term 'prisoner' ... [as used in the various provisions of the PLRA] does not comprehend a felon who has been released.)

169 F.3d at 167.

More recently in *Perez. v. Westchester County Dept. of Corrections*, 587 F.3d 143 (2d

Cir. 2009) the Circuit addressed the scope of the PLRA's limitation on the availability of attorneys' fees. That section of the PLRA limits the availability of attorneys' fees under 42 U.S.C. § 1988 "[i]n any action brought by a prisoner who is confined to any jail, prison, or correctional facility." 42 U.S.C. § 1997e(d)(1). Rejecting the argument that the fee cap applies only to prisoners who are still incarcerated at the time of their case's resolution, the *Perez* court reasoned:

> [W]e believe that the text of the PLRA, although not entirely unambiguous, is most naturally read as referring solely to a plaintiff's status at the time of filing, not at subsequent stages of the proceedings. The act applies to "any action brought by a prisoner who is confined to any jail, prison, or other correctional facility." § 1997e(d)(1) (emphasis added). Its only temporal hook is to the time the action is brought-that is, when it is filed. *See Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 795 (11th Cir. 2003) ("[T]he term 'brought' as used in § 1997e(d)'s 'in any action brought' language means filed."). The reference to a prisoner's "confine[ment in] any jail, prison, or other correctional facility" thus seems to describe the status of a plaintiff at the time of filing, not that of the plaintiff at some later time.
> 
> Nor do we find the redundancy that Plaintiffs say attaches to such a reading. Plaintiffs are right, of course, that we construe statutes to avoid surplusage whenever possible. *See, e.g., Cal. Pub. Employees' Ret. Sys. v. Worldcom, Inc.*, 368 F.3d 86, 106 (2d Cir. 2004) ("Statutes should be construed, if possible, to give effect to every clause and word."). But our understanding of § 1997e(d)(1) does not leave us with a bare redundancy. The phrases "prisoner" and "confined to any jail, prison, or other correctional facility" are not synonymous. The term "prisoner," as defined in the PLRA, "means any person incarcerated or detained *in any facility* who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." § 1997e(h) (emphasis added). The fee cap, instead, applies to only three types of facilities: jails, prisons, and other correctional facilities in which a prisoner may be confined. § 1997e(d)(1). As a result, some "prisoners" are not made subject to the fee cap: for example, those incarcerated or detained in medical facilities or

-11-

> mental institutions. Without going further into the matter, we conclude that Plaintiffs' reliance on the canon against surplusage is misplaced.
>
> Contrary to Plaintiffs' claim, we also do not believe that applying the fee cap to suits filed when Plaintiffs are incarcerated produces "absurd results." True, the fee cap draws a distinction between otherwise identical claims, leading one plaintiff to file while incarcerated and others to wait until their release from incarceration to file suit. *Cf. Doe v. Wash. County*, 150 F.3d 920, 924 (8th Cir. 1998) (holding that the fee cap does not apply to suits brought by former prisoners). But this is not a wholly artificial distinction; Congress may well have thought that persons still incarcerated were more inclined to bring suits than those who were back in the world and now had less time on their hands and better things to do with it. *See* Hearing on S. 3 and S. 866 Before the Senate Committee on the Judiciary, 104th Cong., 1995 WL 496909 (F.D.C.H.) (July 27, 1995) (prepared statement of O. Lane McCotter, Exec. Dir., Utah Dep't of Corrections) ("The driving force behind this flood of litigations is that inmates have 'nothing to lose' in filing even the most frivolous case...."). Moreover, Plaintiffs' preferred reading would produce results at least as peculiar: a plaintiff who obtained a settlement or a verdict on the eve of her release would be covered by the fee cap, while one who obtained similar success immediately after her release would not. All in all, we conclude that the more likely textual reading survives any "absurdity" test.

587 F.3d at 155.

Given the symmetry between the PLRA's language limiting recovery and its language capping attorneys' fees, *Perez* supports the conclusion that the PLRA's limitation on recovery applies only to plaintiffs who are incarcerated at the time the action is commenced.

The Court is aware that its conclusion is contrary to the decision in *Cox v. Malone*, 199 F. Supp.2d 135 (S.D.N.Y. 2002), *aff'd,* 56 Fed. Appx. 43 (2d Cir 2003). Therein the district court held that § 1997e(e) applied to the plaintiff even though he had been released from custody before commencing the action. *Cox*, however, is not binding. *See* 2d Cir. R. 32.1 (limiting the

precedential value of summary orders).  Nor does this Court find it persuasive.  In *Cox*, the court distinguished *Greig*, *supra*, reasoning that the PLRA's exhaustion requirement is a procedural one and "[i]t makes no sense to apply this procedural requirement to former inmates who can no longer avail themselves of prison grievance procedures[,]" whereas § 1997e(e) is a "substantive limitation" whose "purpose is to weed out frivolous claims where only emotional injuries are alleged." 199 F. Supp. 2d at140.  According to the *Cox* court,  § 1997e(e)'s "purpose is accomplished whether section 1997e(e) is applied to suits brought by inmates incarcerated at the time of filing or by former inmates incarcerated at the time of the alleged injury but subsequently released. The fortuity of release on parole does not affect the kind of damages that must be alleged in order to survive the gate-keeping function of section 1997e(e)." *Id.*  The reasoning in *Cox* is the same reasoning rejected by the Second Circuit in *Perez*.  Moreover, as another court has observed: "[T]he question is not, as *Cox* reasoned, whether the statute's gatekeeping function is well-served, or even better-served, by barring suits about prison injuries regardless of the plaintiff's confinement status. Rather, the question is whether the language chosen by Congress in § 1997e(e) plainly limits the provision to prisoners incarcerated at the time an action is commenced. As persuasively found by both the Seventh and Eleventh Circuits, this question must be answered in the affirmative." *McBean*, 260 F.R.D. at 143.

The Court rejects defendants' argument that the PLRA's limitation on recovery applies whether or not plaintiffs were incarcerated on the date the action was commenced. Rather, it applies only to suits for injuries suffered while in custody by plaintiffs who are incarcerated at the time the action is commenced.

Two questions remain, however.  Given that the named plaintiffs in this case were not

incarcerated at the time these actions were brought, does § 1997e(e)'s limitation on recovery still apply? If so, are general damages for the harm to human dignity "mental or emotional damages" limited by the PLRA so as to preclude recovery of those damages by any individual class member who was incarcerated at the time these actions were filed?

### III. The PLRA's Limitation of Recovery Is Inapplicable to Individual Class Members Where the Named Plaintiffs Were Not Incarcerated When the Class Action Complaint Was Filed

Plaintiffs maintain that as none of the named plaintiffs in these actions were incarcerated at the time these actions were commenced, the PLRA's limitation on recovery does not apply to any class member who was incarcerated when the complaints in these actions were filed. The Court agrees.

Initially the Court notes that except for *Kelsey v. County of Schoharie*, 2007 WL 603406 (N.D.N.Y. 2007), which the Court will discuss momentarily, the authorities relied upon by plaintiffs, *e.g. Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004); 5 Newberg on Class Actions at § 24.66 (3d ed., Supp. 2001), all address the PLRA's exhaustion requirement vis a vis class actions and are distinguishable on that ground. Indeed, given that exhaustion allows prison officials an opportunity to address the merits of a claim and that requiring all class members to exhaust could unduly burden a complaint system, tethering exhaustion to named plaintiffs makes sense.

*Kelsey* is the one case that addresses the PLRA's recovery limitation vis a vis class actions, albeit in the context of the requirement of adequacy of representation contained in Rule 23 of Federal Rules of Civil Procedure. The *Kelsey* court found that the PLRA issue was not

relevant to whether the plaintiffs would adequately represent the class. Having previously found that the named plaintiffs had commenced the action after their incarceration and that § 1997e(e)'s limitation did not apply to them, the *Kelsey* Court reasoned that "[i]t follows that no other potential class members commenced this suit, although they may join the class. The language of § 1997e(e) requires a showing of physical injury only in suits brought, i.e. commenced or filed by prisoners, not those in which they join as members of a class action." 2007 WL 603406, at *11. The *Kelsey* court's reference to class members "joining" is unfortunate as Rule 23 class actions are not "opt-in" actions which potential plaintiffs "join" but rather "opt-out" actions in which class members must affirmatively exclude themselves. Nonetheless, this Court reaches the same conclusion as *Kelsey*.

As discussed earlier, Congress' focus in enacting the PLRA was not all claims arising during a plaintiff's incarceration but rather only actions brought by incarcerated persons. As a result, the PLRA's applicability depends on the whether the plaintiff brings the action while incarcerated or free. Thus, holding that the PLRA's recovery limitation depends on the named class action plaintiffs' incarceration status is not repugnant to the PLRA's purpose. Moreover, the instant actions were "brought" by the named plaintiffs albeit on behalf of others similarly situated; they were not brought by the unnamed class members. Thus, under the literal language of the PLRA, its limitation on recovery on applies to actions "brought" by an incarcerated person.

The Court is not persuaded by the two cases cited by defendants. In both cases the courts merely state a conclusion without any analysis. *See Phipps v. Sheriff of Cook County*, 681 F. Supp. 2d 899 (N.D. Ill 2009) (stating that § 1997e(e) only applies to persons incarcerated at the time the action was commenced and that as neither named plaintiff was a prisoner the PLRA

would not preclude their claims "or the claims of other class members who were not incarcerated"); *Malone v. Becher*, 2003 WL 22080737, *1 (S.D. Ind. Aug. 29, 2003) (stating that claims "would be subject to the physical injury requirement . . . if the class members had been prisoners when this action was filed").

In sum, the Court holds that the PLRA's limitation of recovery does not apply where, as here, none of the named plaintiffs who brought the class action were incarcerated at the time the action was commenced. Given this conclusion it is unnecessary for the Court to address whether general damages for the harm to human dignity are damages for "mental or emotional injuries" under the PLRA.

**Conclusion**

For the reasons set forth above, the Court holds that the recovery limitation of the Prison Litigation Reform Act of 1997 ("PLRA"), 42 U.S.C. § 1997e(e), is inapplicable to the present case.

**SO ORDERED.**

Dated: Central Islip, New York
September 22, 2010

/s/
Denis R. Hurley
Senior District Judge