```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X

                                      MEMORANDUM AND ORDER
                                        99-CV-2844(DRH)
In re NASSAU COUNTY STRIP
SEARCH CASES


-------------------------------X
A P P E A R A N C E S:


For Plaintiffs:
     Herbst Law PLLC
     420 Lexington Avenue - Suite 300
     New York, New York 10170
       By: Robert L. Herbst, Esq.

     Giskan Solotaroff Anderson & Stewart LLP
     11 Broadway Suite 2150
     New York, New York 10004
       By: Iliana Konidaris, Esq.

     Beldock Levine & Hoffman LLP
     99 Park Avenue, Suite 1600
     New York, New York 10016
       By: Jonathan C. Moore, Esq.

     Emery Celli Brinckerhoff & Abady LLP
     75 Rockefeller Plaza, 20th Floor
     New York, New York 10019
       By: Matthew D. Brinckerhoff, Esq.

     Wolf Haldenstein Adler Freeman & Herz, LLP
     270 Madison Avenue
     New York, New York 10016
       By: Jeffrey G. Smith, Esq.

For Defendants:
     Nassau County Attorney's Office
     Carnell T. Foskey
     Acting County Attorney
     One West Street
     Mineola, New York 11501
       By:  Liora M. Ben-Sorek, Esq.

HURLEY, Senior District Judge
```

In keeping with the Court's request at the January 29, 2014 status conference, plaintiffs' counsel, under covering letter dated February 23, 2014, submitted a "proposed Final Judgment, with the Notices and Claim Forms as exhibits, for [my], review." (Pls.' Feb. 23, 2014 Letter at 1.) The County has objected to, or suggested alternate language as to certain portions of those submissions. (<u>See</u> Defs.' Mar. 5, 2014 Letter.)

The purpose of this opinion is to address defendants' comments about the proposed judgment and the accompanying notice and claim forms.

> Defendants' Comments as to Certain Core Facts
> and the Procedural History of the Case as set
> <u>Forth in the Proposed Judgment</u>

The first two pages of the proposed judgment provide a fairly detailed recitation of the case's procedural history along with some facts (e.g. number of strip searches) and conclusions (e.g. reasons defendants conceded liability). Defendants have expressed concerns about what is included, as well as what is absent from the introductory language, thereby bringing to the fore the issue of whether anything beyond a brief preface to the judgment's decretal paragraphs is required or, indeed, desirable.

Given the history and purpose of the separate document rule under Federal Rule of Civil Procedure 58(a), the answer to both of the above questions is "no." As Judge Easterbrook writing for a panel of the Seventh Circuit succinctly noted in

Citizens Elec. Corp. v. Bituminous Fire & Marine Ins. Co: "Like any proper judgment, the decree entered in this case . . . . says who is liable for how much, then stops."  68 F.3d 1016, 1021 (7th Cir. 1995); see also In re Cendant Corp. Securities Litigation, 454 F.3d 235, 243 (3d Cir. 2006)("Our conclusion that the separate-document requirement does not allow for an extended presentation of facts and procedural history is supported by Model Forms 31 and 32[1] of the Federal Rules of Civil Procedure ('Judgment on Jury Verdict' and 'Judgment on Decision by the Court').  See Fed. R. Civ. P. 58 advisory committee notes on 2002 amendments.")  This is not to say that plaintiffs violated the separate document rule under Second Circuit law via their submission or that prefatory recitation provided was inaccurate.  I do not believe either to be the case.  But based on its problematic character, the dispute between the parties as to its contents will not be further discussed.  Rather, the first two pages of the proposed judgment have been replaced by the Court with a single introductory sentence consistent with the purpose of Rule 58 and the sentiment expressed by Judge Easterbrook in the In re Cendant Corp. Securities Litigation.

> Defendants' Objection to the Suggested Post-Judgment Interest Rate in the Proposed Judgment

---

[1] Forms 31 and 32 have been renumbered and re-titled such that currently, Form 70 is "Judgment on a Verdict" and Form 71 is "Judgement by the Court Without a Jury."

Plaintiffs have included the New York post-judgment rate of 9% in the proposed judgment. Defendants contend that the federal interest rate set forth in 28 U.S.C. § 1961 applies. Neither party provides authority for their position beyond identifying the statutory provision believed to be controlling. Nonetheless, a fair reading of Section 1961 viewed in conjunction with established case law indicating that the Section applies to diversity cases, support defendants' position. Cf. Schipani v. McLeod, 541 F.3d 158, 164 (2d Cir. 2008)("In a diversity case . . . . post judgment interest is governed by federal statute [, viz. 28 U.S.C. § 1961(a)]" and Plaut v. Estate of Rogers, 959 F. Supp. 1302, 1309 (D.C. Colo,. 1997)("[T]he appropriate post-judgment interest rate in all cases in federal court, including diversity cases, is governed by federal law. The applicable rate is set forth in 28 U.S.C. § 1961, entitled 'Interest.'"). Accordingly, the proposed judgment has been modified by providing for post-judgment being assessed at the federal, not the state rate.

> Defendants' Objection to Provision in the
> Proposed Judgment Ordering Payment of the
> Amount of the Judgment Into Court

Plaintiffs' proposed judgment directs defendants "to deposit into Court the sum of $11,508,000 within 30 days of entry of final judgment." (Proposed Judgment at 4.) That provision should be stricken, defendants argue, because it is unnecessary given the financial status of the County, as well as supposedly

irreconcilable with my earlier statement that no bond would be required to secure a stay of judgment should a stay ultimately be granted by this Court. (See Sept. 20, 2013 Tr. at 14, and Oct. 18, 2013 Tr. at 21:20-21.)

Plaintiffs counter by observing that "[t]here is a significant difference between not posting a bond for purposes of appeal and the provision of the final judgment requiring the deposit of the judgment amount into Court. What the County will do after judgment is entered is a separate matter that has no bearing on the issue." (Pls. Mar. 7, 2014 Letter at 2.) The precise nature of that distinction as a practical matter may be elusive for in each instance defendants are required to provide something of value – either a bond or cash — to assure that adequate funds will be on hand at the end of the appeals process should plaintiffs continue to prevail. Nonetheless, appealing a judgment with a concomitant request for a stay implicates a different stage of the proceeding than the entry of the judgment itself.

When and if a stay of judgment is sought, the subject of the present dispute will become germane but not before. And, based on Nassau County's well-publicized financial challenges as of late, depositing the sums awarded for attorney's fees and expenses with the Clerk of Court is appropriate and is thus directed pursuant to the judgment which the Court has signed

today.

### Continued Payment of Administrative Costs by County

Defendants, in their March 5, 2014 letter, correctly note that "[t]o date, the Court has imposed administrative fees (such as copying and mailing of notices by the Class Administrator) upon the Defendants." (Defs.' Mar. 5, 2014 Letter at 3.) That practice, defendants maintain, should now be changed because (1) "[s]hould the County prevail upon appeal of the Final Judgment, it will not be able to recoup those expenditures," and (2) "[b]ecause CPLR § 904(d) permits the Court to direct a plaintiff to bear the costs of class notices, and in light of the change in law (at least the Federal law) with regard to permissibility of strip searches upon admission to correctional centers, the Defendants' [sic] respectfully request that this Court revisit its prior order and shift the future administration expenses to the plaintiffs." Id.

In response, plaintiffs argue "CPLR § 904(d) is not applicable to this federal case, and even if arguendo it were, it would not require imposing the costs upon plaintiffs. The fact that the federal claims were dismissed is no reason to shift the costs of administration to plaintiffs in light of their having prevailed, upon the County's concession of liability 10 years ago, on the state constitutional claim." (Pls.' Mar. 7, 2014 Reply at 2.)

Plaintiffs' assertion as to the supposed inapplicability of CPLR § 904(d) is presented as a supposed truism. However, since the soundness of that conclusion is not obvious to the Court, and in view of the absence of supporting authority being provided, I have assumed, <u>arguendo</u>, that § 904 is germane.

Section 904(d)(I) provides that a court may, "if justice requires," shift the cost of notification from the plaintiff with whom the onus would typically rest to the defendant in whole or in part. CPLR § 901(d)(I). Although relevant case law is sparse, <u>Pludeman v. Northern Leasing Systems, Inc.</u> instructs that the subject section authorizes placing the notification costs with a defendant depending on "the merits of the action, the defenses thereto, and the resources of the respective parties." 74 A.D.3d 420, 425, 904 N.Y.S.2d 372, 378 (First Dep't 2010).

Proceeding in reverse order, the County, even in its diminished financial state, is presumably better able than plaintiffs – whose only link is the shared misfortune of having been arrested for a non-felony offense and then undergoing the humiliation of being strip searched upon entry to NCCC – to shoulder the costs of notification.

As far as "the defense[]" to plaintiffs' claims is concerned, defendants conceded liability, i.e. that their actions

did, in fact, violate each class member's constitutional right to be secure in his or her person. Basically what remains at this juncture is for class members to respond to the general damages notice by filing a claim and, for those who intend to pursue special damages, to commence a new action for that purpose. But, of course, the landscape has changed since defendants' admission of liability as a result of <u>Florence</u> and the dismissal of the federal constitutional claim. Still, the proposition that <u>Florence</u> will serve as the vehicle (1) to erase their concession of liability, and (2) for the New York Court of Appeals then — unencumbered by the concession — to reconcile the subject strip searches with the protections afforded to New York citizens under Article I, Section 12 of New York State Constitution, is problematic at best. So yes, the County's prospects as far as mounting a defense are arguably better than pre-<u>Florence</u>, but not sufficiently better to shift the costs of notification from the County to the class.

And as to the initial factor in <u>Pludemane</u>, viz. the merits of the action, the observations just made about the strength of defendants' defense to their admitted liability also sheds light on the strength of plaintiffs' remaining claim viewed as of this stage of the proceeding.

In sum, defendants' arguments calling for the shift of the notification costs from the defendants to plaintiffs are not

convincing.

This concludes the Court's explanation to counsel concerning the changes made to the draft judgment submitted by plaintiffs.[2] Attention will now be focused on the accompanying proposed notice and claim forms. In that regard, the sequence in which the forms are discussed by the Court follows the order in which they are addressed in the County's March 5th letter rather than by their respective exhibit numbers as recited in the judgment.

### Proposed Non-Book and Bail Draft Notice (Exhibit 3)

The word "them" has been deleted from the beginning of the third line in the "Summary" portion of the Notice on the first page as requested by defendants. However, defendants' objection to the third bullet point which they categorize as providing "legal advice" is found to be without merit. Class members are entitled to be notified not only of the general damages award but also of the other major benefit received by class counsels on their behalf, i.e. the concession of liability and the anticipated effect of that concession on subsequently commenced lawsuits seeking special damages.

The misspelled first word on the second page has been

---

[2] The other major items included within the proposed judgment submitted by plaintiffs which were challenged by defendants in their March 5, 2014 letter, were addressed vis-a-vis the subject matter involved in this Court's Memorandum & Order dated April 2, 2014 as amended on April 7, 2014.

corrected to read "were" and the "a" immediately before the word "previous" has been deleted.[3]

### Proposed Book and Bail Draft Notice (Exhibit 1)

Defendants' comments about the proposed Book and Bail draft notice read in pertinent part:

> In the third bullet point under **Summary**, defendants object to the insertion of the term "to the best of your recollection." Notwithstanding discussions held two years ago on the proposed notice language, over the past six months this Court and the parties have spent considerable time discussing the contents of the notices. At no time did Plaintiff mention that these issues had been definitely determined in 2012. It was, however, agreed and determined during the recent conferences that the subjects of the Book and Bail notice and claim form would be required to attest under the penalty of perjury to the fact that they were strip searched upon admission to the NCCC. Insertion of the phrase "to the best of your recollection" is too ambiguous and invites deception. These individuals either were or were not strip searched upon admission to the Correctional facility.
>
> Defendants [also] object to the legal advice provided in the fourth bullet point, specifically the statement notifying plaintiffs of the estoppel effect of the liability concession.

(Defs.' Mar, 5, 2014 Letter at 4.)

The Court is underwhelmed by the objection to "the best of your recollection" verbiage. In this Court's January 25, 2012 Order, it addressed the subject now under discussion thusly:

---

[3] This change has also been made to page 1 of Exhibit 1.

> The Court further proposes that those
> members of the class who have been identified
> as potential "book and bails" should be sent
> the B&B Class Notice and a claim form in the
> format submitted by plaintiffs, with . . .
> the following modifications: In Section 3,
> which is entitled "Certification and
> Signature," the sentence reading "By signing
> this form, I am confirming that the above
> information is correct" should be deleted and
> replaced with the following language: "I
> declare under penalty of perjury that, to the
> best of my recollection, I was strip searched
> at the Nassau County Correctional Center
> following my arrest for a misdemeanor or non-
> criminal offense on the dates listed in
> Section 2, above." That sentence shall be
> followed with: "I acknowledge that Nassau
> County may challenge my claim."
>
> Any objections to or comments regarding
> the proposals outlined above or the attached
> documents shall be filed on or before
> February 3, 2012. Any replies shall be filed
> on or before February 10, 2012.

(Jan. 25, 2012 Order at 4.)

By letter dated February 3, 2012, defendants advised that they had "no objections to the Notice and Claim Forms proposed by the Court for . . . the potential Book & Bails." (Defs.' Feb. 3, 2012 Letter at 1.)

Based on the County's representation, I viewed — and still view — the matter as resolved. Incidentally, however, deletion of the subject modifier to the attestation clause would likely have an unnecessary inhibiting affect upon aggrieved persons. Simply put, some members may be understandably hesitant to unequivocally swear under penalty of perjury to being strip

-11-

searched upon admission to the NCCC during the class period if, for instance, their experience was a decade or so ago and this was not their sole strip search experience.  To the extent their attestation "to the best of [their] recollection," is arguably "equivocal," the County is hard pressed to legitimately complain since (1) it provided the list of class members from its records, only later carving-out possible book and bail exceptions to that list, and (2) more importantly, it has the right to challenge the accuracy of any book and bail attestation.

With respect to defendants' objection to the fourth bullet point concerning purported "legal advice" being provided in the Notice, that issue was addressed earlier in reviewing defendants' challenges to the Non-Book and Bail Draft Notice.

Proposed Non-Book and Bail Claim Form (Exhibit 4)

Defendants advise that "[t]his form is acceptable subject to the objections [raised and decided] on the record." (Defs.' Mar. 5, 2014 Letter at 4.)

Proposed Book and Bail Claim Form (Exhibit 2)

What I said earlier about defendants' objection to the phrase "to the best of my recollection" is hereby incorporated by reference.[4]

---

[4] Parenthetically, the likely inhibiting affect of deleting the subject language from this claim form is even more pronounced since here the class member attests to having been strip searched on a given day or days instead of sometime during the approximately three year class period.

Defendants' request that the Court add the term "upon admission" in the second line of "Section 3" is granted. The term shall appear in the modified claim form immediately after the word "searched."

The Court has also changed some of the language in Section 2 <u>sua sponte</u>. In the proposed Book and Bail claim form, that Section reads: "Below are listed the booking dates for each date of arrest for a misdemeanor or non-criminal offense from May 20, 1996 through June 1, 1999 <u>when you were strip-searched</u> at the Nassau County Correctional Center." (Emphasis added). Telling the recipients of the form that they "were strip-searched" on the dates listed runs counter to the very reason that some of the 17,000 believed class members were sent Book and Bail notices and claims forms, i.e. to determine which of those individual-arrestees were <u>not</u> strip-searched because they were released on bail prior to that part of the intake process being conducted. Accordingly, Section 2 will be modified by replacing the word "were" with the term "may have been." In addition, the box entitled "Value of Your Claim" under Section 2 has been deleted as confusing for essentially the same reason, as well as unnecessary.

Section 3 has also been modified, <u>sua sponte</u>, by inserting "one or more of" in the second sentence immediately before the phrase "on the date(s) listed in Section 2," coupled

with a direction in Section 2 to "cross-out (by putting a line through) any 'Line #(s)' which pertain to an arrest which did <u>not</u> result in your being strip searched upon admission to the Nassau County Correctional Center." The reason for this modification is that arrestees within the Book and Bail category who had more than one qualifying arrest did not necessarily have the same experience on each occasion.

## CONCLUSION

This Memorandum and Order has been written solely to explain to counsel the reasons behind the major modifications to the proposed forms presented by plaintiffs pursuant to my direction.

SO ORDERED.

Dated: April 11, 2014
      Central Islip, New York

_____
DENIS R. HURLEY, U.S.D.J.