```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------X
                                         MEMORANDUM & ORDER
                                         99-CV-2844(DRH)
In re NASSAU COUNTY STRIP
SEARCH CASES



----------------------------X
A P P E A R A N C R S:

For Plaintiffs:
    Herbst Law PLLC
    420 Lexington Avenue - Suite 300
    New York, New York 10170
      By: Robert L. Herbst, Esq.

    Giskan Solotaroff Anderson & Stewart LLP
    11 Broadway Suite 2150
    New York, New York 10004
      By: Iliana Konidaris, Esq.

    Beldock Levine & Hoffman LLP
    99 Park Avenue, Suite 1600
    New York, New York 10016
      By: Jonathan C. Moore, Esq.

    Emery Celli Brinckerhoff & Abady LLP
    75 Rockefeller Plaza, 20th Floor
    New York, New York 10019
      By: Matthew D. Brinckerhoff, Esq.

    Wolf Haldenstein Adler Freeman & Herz, LLP
    270 Madison Avenue
    New York, New York 10016
      By: Jeffrey G. Smith, Esq.

    Cuti Hecker Wang LLP
    154 Grand Street
    New York, New York  10013
      By: Mariann Meier Wang, Esq.

    Law Offices of Martin E. Restituyo Esq.
    135 Avenue of the Americas
    2nd Floor
    New York, New York 10105
      By: Martin E. Restituyo, Esq.
```

For Defendants:
    Nassau County Attorney's Office
    Carnell T. Foskey
    County Attorney
    One West Street
    Mineola, New York 11501
      By:  Liora M. Ben-Sorek, Esq.
           Robert F. Van der Waag, Esq.

HURLEY, Senior District Judge

The purpose of this Memorandum and Order is to address and, to the extent necessary, resolve the issues raised in the plaintiffs' July 8, 2016 letter. By way of format, the subjects will be discussed sequentially under the captions utilized by plaintiffs.

### Deadline by Which the County Must Deposit the Amount of the Judgment into Court

In the Court's final judgment signed on April 11, 2014, defendants were directed "to deposit into Court the sum of $11,508,000 within 30 days." (Apr. 11, 2014 Final Judgment at 2.) Stays were thereafter put in place pending appeal.

The Second Circuit affirmed the final judgment with its mandate being issued on June 16, 2016. As a result, the deposit into Court was to be made by July 16, 2016. Plaintiffs reminded defendants of this obligation by, inter alia, a letter dated June 17th. Hearing nothing in response, plaintiffs provided the Court with a status report via their July 8th letter and an implicit request for the Court's assistance as to this — should such prove to be necessary — and some other "loose ends" discussed infra.

Defendants responded in pertinent part thusly:

> [T]he County, subsequent to this Court's [April 11, 2014] Judgment, had the County Legislature approve the full amount of the Judgment; and, approved the issuance of any and all bonds to pay the Judgment, if necessary. Further, the County now has a Litigation Fund sufficient to pay these amounts. Incidentally, these developments are the elements which the County did not have in place when it first asked this Court to dispense with any deposit or bond posting.
>
> Accordingly, the County is ready, willing and able to pay any amount of that judgment into Court or a bank, if required. However, the County requests that this Court modify its initial directive since it is no longer necessary. It is respectfully requested that the County, if this Court directs, will deposit Five Million ($5,000,000.00) Dollars into a Special Revenue Account which would be a segregated account earmarked, and to be used solely, for this litigation. As any further money is needed beyond that amount, the County can and will make those payments from its Litigation Fund. This is especially appropriate in the instant case since we will not know what claims will be submitted to the Administrator and their amounts. Again, the timeframe for the claims to be filed will not even expire for almost two years (February, 2018).

(Defs.' July 13, 2016 Letter at 2.)

The Court, like plaintiffs, is "glad to hear that County is able to comply with [the] July 16 deadline to pay the amount of the Final Judgment into Court in compliance with the 30-day period in the Final Judgment." (Pls.' July 13, 2016 Letter at 1.) Defendants' concomitant request that its payment provisions be restructured in the manner suggested is rejected

for several reasons including:

(1) the April 11, 2014 Judgment, including the appeal therefrom, represents the law of the case, and defendants have proffered no convincing reason to disturb the Court's earlier directive, see Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010)("The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly decided by the appellate court's mandate.");

(2) to the extent the County may be concerned about the interest earned on the deposited money prior to its disbursement, the $11,508,000 shall be deposited by the Clerk of Court into an interest bearing account with the interest earned inuring to the benefit of the County;

(3) the County's apparent suggestion that the $5,000,000 it proposes be deposited into a "Special Revenue Account" may ultimately prove to be sufficient to satisfy the defendants' payment obligations seems unrealistic given that there is already a charge of over $4,000,000 against the judgment. (See Defs.' July 13, 2016 Letter at 2; Apr. 11, 2014 Final Judgment at 3-4 (". . . in accordance with the Memorandum and Order dated April 7, 2014, class counsel are awarded attorneys' fees of $3,836,000, and expenses of $182,030,25, to be paid first from the Common Fund and then by defendants if, after

the claims period ends, there is insufficient money in the common fund to pay all class claims and attorneys fees and expenses.").) And yet to be determined are the post-judgment fees and expenses associated with the appeal and other case related activities since April 10, 2014;

(4) The unconvincing character of the County's suggestion mentioned in the prior paragraph is not cured via its reference to the "Litigation Fund." (Defs.' July 13, 2016 Letter at 2.) No specific information concerning that fund has been proffered by defendants such as its amount, other present and likely charges against the account or, most importantly, the governmental procedures and accompanying time frames involved in withdrawing or replenishing monies from the cited source. As to the last consideration, class members and their counsel have an obvious interest after all these years of receiving the monies due them without having to navigate unnecessary potential bureaucratic delays which might come about should defendants' request be granted.

In sum, the County has represented that it is "ready, willing and able to pay any amount of that judgment into Court or a bank, if required." (Id.) As per this Memorandum and Order, the County is "required," i.e. directed, to deposit the full amount of the final judgment ($11,508,000.00) with the Clerk of Court on or before August 15, 2016, which monies shall be

deposited by the Clerk of Court in an interest bearing account. The County shall be required to apprise the Court with regard to any petition for certiorari as set forth infra. Upon exhaustion of further appellate review, the Court shall enter orders regarding the disbursal of the funds so deposited, including, assuming the final judgment remains undisturbed, disbursal for attorneys' fees and costs.

### Proposed Revisions to Notices and Claim Forms

"[B]cause of the passage of more than two years and the completion of the appellate proceedings in the Second Circuit, the parties agree that the dates and certain other language in the notices and claim forms have to be revised before they can be mailed." (Pls.' July 8, 2016 Letter at 2.) Their agreement extends to the specific changes needed to update the mailings with one exception, to wit: "the timeframe for filing lawsuits for damages beyond the $500 per strip search." (Defs.' July 13, 2016 Letter at 2.)

Plaintiffs propose that the revised "start date of the 180-day tolling provision [should be changed] from the date of the entry of the Final Judgment, April 11, 2014, to August 15, 2015, the date by which the notices and claim forms are [now] to be mailed . . . and any further appeal to the United States Supreme Court has been resolved." (Pls.' July 8, 2016 at 2-3.)

In defendants' view, the 180-day tolling period should

be deemed to have started running as of the "Second Circuit Court of Appeals Mandate which was issued on June 16, 2016," absent any reference to either the date the notices and forms are mailed to the class members or to the defendants' expressed intent to seek a writ of certiorari from the high court. (Defs.' July 16, 2016 Letter at 2.)

My goal in resolving the present dispute is to update the class notices and forms, not to alter the substance of the April 2014 judgment. That judgment provides that the 180-day toll was to run from the date of the judgment or, in the event of an appeal, the issuance of a mandate, not from the later mailings.[1] Moreover, no stay is in effect as to any further appellate steps defendants may elect to pursue.

For the reasons indicated, the updating process will be appropriately accomplished consistent with the April 2014 judgment by measuring the 180 toll from June 16th of this year rather than the August mailing date urged by plaintiffs.

### 60 Days to File Fee Application

Plaintiffs ask for 60 days to file their post-judgment

---

[1] The April 10, 2014 Final Judgment provides in pertinent part at page 3: "As set forth in [the] Notices, the statute of limitations for class members' filing of individual lawsuits for special damages is ORDERED tolled for an additional period of 180 days after entry of final judgment. If an appeal is taken from final judgment, the 180-day additional tolling period will not begin to run until the issuance of the mandate from the Court of Appeals."

fee application.  The County advises, as have plaintiffs, that the parties intend to discuss the issue with the hope of reaching an agreement "without the necessity of [plaintiffs] having to file a motion for same."  (Defs.' July 13, 2016 Letter at 2-3.)  Towards that end, defendants suggest that the 60-day period run from the time they are in receipt of plaintiffs' "time records which has yet to be accomplished."  (Id. at 3.)

Having considered the parties' position, it is ordered that (1) plaintiffs provide defendants with their fee demand by September 5, 2016 with supporting documentation, and (2) if parties are unable to agree on the amount to be paid, the required motion shall be briefed as set forth infra.

## Conclusion

In accordance with the foregoing, it is hereby

ORDERED that defendants deposit the full amount of the final judgment ($11,508,000.00) with the Clerk of Court on or before August 15, 2016; and it is further

ORDERED that the monies deposited with the Clerk of Court shall be held in an interest bearing account until such time as the Court enters any Orders respecting same; and is it further

ORDERED that defendants shall (1) advise the Court when a petition for certiorari has been filed or when the time to file said petition has expired without a petition having been

filed; and (2) in the event a petition is filed advise the Court of any ruling on the petition within ten (10) days of said ruling; and it is further

ORDERED that the deadline for any fee application by plaintiffs is extended to on or before October 30, 2016 with defendants' papers in opposition to be filed on or before 15 business days of the actual date of plaintiffs' filing and the reply, if any, being due on or before 10 business days thereafter; and it is further

ORDERED that the agreed upon changes to the claim form set forth in plaintiff's letter of July 8, 2016 are approved and that the claim form shall state, with respect to the time limits for filing a lawsuit for damages beyond the $500 per strip search, as follows:

> The time limits for filing a lawsuit for additional damages are based on the three-year statute of limitations applicable to these claims. The Court placed a hold (i.e. stoppage on the running of the three year statute of limitations) on May 20, 1999. That hold continues to be in effect until 180 days after June 16, 2016, so that you will have until at least December 13, 2016 to file an individual lawsuit for additional damages. This means the amount of time you have to file a separate lawsuit depends upon the date you were stripped search. For example, if you were strip searched anytime from May 20, 1996 until November 16, 1996, you have until December 13, 2016 to file a separate individual lawsuit for additional damages. For example, if you were strip searched on June 1, 1997, you would have one year after December 13, 2016 to file your individual

lawsuit for additional damages.  If you were
strip searched on June 1, 1998, you would
have two years after December 13, 2016 to
file your individual lawsuit for additional
damages. If you were strip searched on June
1, 1999, you have the entire three-year
statute of limitations period to file a
separate lawsuit. If you have a question
about additional damages or the amount of
time you have to file a separate you should
contact an attorney.

Dated:   Central Islip, New York
         July 28, 2016

                                        s/ Denis R. Hurley
                                        Denis R. Hurley
                                        United States District Judge