```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
                                                           MEMORANDUM & ORDER
In re NASSAU COUNTY STRIP                                  99-CV-2844 (DRH)
SEARCH CASES


-------------------------------------------------X
```

**A P P E A R A N C E S:**

**For Plaintiffs:**
    Herbst Law PLLC
    420 Lexington Avenue - Suite 300
    New York, New York 10170
    By:    Robert L. Herbst, Esq.

**For Defendants:**
    Nassau County Attorney's Office
    Carnell T. Foskey
    County Attorney
    One West Street
    Mineola, New York 11501
    By:    Liora M. Ben-Sorek, Esq.
           Robert F. Van der Waag, Esq.

**For Proposed Intervenors New York State Office of Temporary and Family Disability Assistance, Office of Children and Family Services and Department of Health**

    Eric T. Schneiderman
    Attorney General, State of New York
    120 Broadway, 25th Floor
    New York, New York 10271
    By:    Barbara D. Underwood, Solicitor General
           Steven C. Wu, Deputy Solicitor General
           Matthew w. Grieco, Assistant Solicitor General

**For Proposed Intervenors United States Departments of Agriculture and Health and Human Services**
    Bridget M. Rohde
    Acting United States Attorney
    Eastern District of New York
    610 Federal Plaza, 5th Floor
    Central Islip, New York 11722
    By:  Mary M. Dickman, AUSA

**HURLEY, Senior District Judge:**

The purpose of this Memorandum is to address the motions of (1) Proposed Intervenors New York State Offices of Temporary and Family Disability Assistance ("OTDA"), Office of Children and Family Services ("OCFS") and Department of Health ("DOH") (collectively "NYS Intervenors") and (2) Proposed Intervenors United States Departments of Agriculture ("USDA") and Health and Human Services ("HHS") (collectively "USA Intervenors") to intervene in this action and for an order vacating the Court's Order of April 10, 2017 (the "April Order")[1] insofar as it directs Nassau County Plaintiffs requested access to this information so that the computerized list of class members can be updated in an effort to locate class members and provide them with the monetary relief to which they are entitled under the judgment entered in this action on April 10, 2014.[2]

## BACKGROUND

By way of background, the April Order addressed an application by the plaintiff class for the County "to grant access to the electronic database maintained by or available to its Department of Social Services ["NCDSS"] for the purpose of cross-matching it with the electronic database of class members to uncover updated contact information for those class members." April Order at 1. That application was originally opposed by the County on the grounds that "access to New York State's electronic database known as the Welfare Management System ("WMS") was granted to NCDSS for the limited purpose of implementing various

---

[1] That decision is reported at 2017 WL 1322128 (E.D.N.Y 2017).

[2] A brief description of the background of this litigation may be found in *In re Nassau County Strip Search Cases*, 639 Fed. App'x. 746 (2d Cir. 2016).

federal and state social services assistance programs and it has no authority to use WMS for any other purpose or to grant access to any unauthorized third party, including plaintiffs and to do so would be a violation of federal and state law." *Id.* at 4 (internal quotation marks omitted). Affidavits from the Deputy Counsel to the Office of Temporary and Disability Assistance ("OTDA"), the Deputy Assistant Counsel with the New York State Office of Children and Family Services (successor to the New York State Department of Social Services) and the Director of the Bureau of Health Insurance Programs within the Division of Legal Affairs of the New York State Department of Health were submitted in support of the County's position. Neither New York State nor any of the cited agencies sought to intervene in this matter. After considering the positions of the parties, the Court directed the County in the April Order to "run the names of said class members [i.e. those who had not yet filed claims] and their contact information through WMS for updated addresses and provide to the Claims Administrator any updated addresses garnered from WMS and from [Nassau County Corrections Center] records at the same time." No deadline for compliance was set.

Thereafter, the Court received an application from the County for a conference. According to that application, a copy of the April Order was sent to both the County's Department of Social Services and the Deputy General Counsel for the OTDA, which agencies were advised that the County would be complying with the Order. "In response, the State raised a number of questions regarding the manner in which the search was conducted and noted various objections." DE 519 at 2. Despite several communications and conversations, the State has "yet to withdraw their objections" and rejected a suggestion that "the State social services agencies

3

conduct the requisite search to satisfy any concerns about the methodology of the search, or in the alternative, that they intervene in this action and address their concerns about the breadth of the Court's Order" "on the basis that State is not a party to this action." *Id*. In addition, an e-mail from the USDA Food & Nutrition Service which states that its "National Office has determined that Nassau County Social Services cannot legally release this PII [personal identification information] of SNAP recipients" was forwarded to the County; an "offer to re-run the records search without any SNAP information" was "rejected by the State." *Id.* In an Order dated May 2, 2017 (the "May Order"), the Court denied the request for a conference "[a]s neither New York State nor the USDA is before this Court, the Court cannot compel their attendance." May Order at 2-3. The Court went on to state that "[s]hould either New York State or the USDA wish to be heard on this matter, the appropriate course would be for them to move to intervene in the action, which motion, if made, should include the nature of their interest, as well as their specific objections, and concomitant legal arguments, to the April Order." The present motions followed.

## DISCUSSION

### I.     Applicable Standard  -  Motion to Intervene

Intervention in a civil action is governed by Rule 24 of the Federal Rules of Civil Procedure. Intervention as of right is appropriate when the party seeking to intervene "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Permissive intervention by a government agency or officer may be permitted "if a party's

4

claim or defense is based on . . . any regulation, order, requirement, or agreement issued or made under [a] statute or executive order administered by the officer or agency." Fed. R. Civ. P. 24(b)(B). The party seeking to intervene "bears the burden of demonstrating that it meets all the requirements for intervention." *Mehedi v. Memry Corp.*, 2017 WL 2873224, * 4 (D. Conn. July 5, 2017). "In considering a motion to intervene, the court must accept as true the non-conclusory allegations of the motion . . . ." *Id*. (internal quotation marks omitted).

II.     **The Motions to Intervene Are Granted**

Here, both the USA Intervenors and the State Intervenors claim an interest in the property at issue in the present dispute - the WMS database - by virtue of statutes and regulations governing the disclosure of the information relating to various social service assistance programs contained on that database.[3]  Specifically, the USA Intervenors assert that "USDA and HHS have an interest in the property at issue, *viz*. the PII contained in the WMS database that Congress, by statute has required that they protect." DE 533-1 at p. 6 (citing 7 U.S.C. § 2020(e)(8)(A)-(D); 42 U.S.C. § 1396a(a)(7)(A); 7 C.F.R. 272.1, 42 C.F.R. 431.301). Thus, it asserts that it is entitled to intervene as of right.  However, proposed intervenors do not address whether Nassau County, as an existing party, adequately represents that interest, a required part of the intervention as of right analysis. The Court need not address the issue because, as discussed below, it finds permissive intervention is proper.

Here, Nassau County opposed release of the PII on the WMS database as violative of

---

[3] State Intervenors describe WMS as the "New York State database for 'receiving, maintaining and processing information relating to persons who have applied for or been determined eligible for benefits' under public assistance and care programs and SNAP." State Intervenors Mem. at 3 (citing N.Y. Soc. Serv. Law ("SSL") §21(1)).

both state and federal statutes governing the social service assistance programs' information contained in the WMS database. These programs are administered by the proposed intervenors. Permissive intervention by the Federal and State Intervenors is therefore appropriate and said portions of the present motions are granted.

The Court will now address that portion of the Intervenors' motions which address the propriety of the disclosure ordered in the Court's April Order, beginning with the USA Intervenors' arguments.

### III. Disclosure Under the Federal Statutes

The WMS database contains information relating to two federal programs - the Supplemental Nutrition Assistance Program ("SNAP"), which is overseen by the USDA, and Medicaid, which is overseen by HHS.

### A. SNAP

SNAP provides eligible households with an allotment to purchase food pursuant to the Food and Nutrition Assistance Act ("FNA"). 7 U.S.C. § 2013(a). States that participate in SNAP must provide a plan of operation for approval to an agency of the USDA and are required to administer the program in compliance with the FNA and regulations promulgated thereunder. 7 U.S.C. 2020(a)(3), (d), (e); 7 C.F.R. 272.2(a)-(d).

Under the FNA, a state plan of operation "shall provide," among other things:

> safeguards which prohibit the use or disclosure of information
> obtained from applicant households, except that--
>
> (A) the safeguards shall permit–
>    (i) the disclosure of such information to persons directly
>    connected with the administration or enforcement of the

provisions of this chapter, regulations issued pursuant to this chapter, Federal assistance programs, or federally-assisted State programs; and
(ii) the subsequent use of the information by persons described in clause (i) only for such administration or enforcement;

(B) the safeguards shall not prevent the use or disclosure of such information to the Comptroller General of the United States for audit and examination authorized by any other provision of law;

(C) notwithstanding any other provision of law, all information obtained under this chapter from an applicant household shall be made available, upon request, to local, State or Federal law enforcement officials for the purpose of investigating an alleged violation of this chapter or any regulation issued under this chapter;

(D) the safeguards shall not prevent the use by, or disclosure of such information, to agencies of the Federal Government (including the United States Postal Service) for purposes of collecting the amount of an over issuance of benefits, as determined under section 2022(b) of this title, from Federal pay (including salaries and pensions) as authorized pursuant to section 5514 of Title 5 or a Federal income tax refund as authorized by section 3720A of Title 31;

(E) notwithstanding any other provision of law, the address, social security number, and, if available, photograph of any member of a household shall be made available, on request, to any Federal, State, or local law enforcement officer if the officer furnishes the State agency with the name of the member and notifies the agency that–
  (i) the member–
    (I) is fleeing to avoid prosecution, or custody or confinement after conviction, for a crime (or attempt to commit a crime) that, under the law of the place the member is fleeing, is a felony (or, in the case of New Jersey, a high misdemeanor), or is violating a condition of probation or parole imposed under Federal or State law; or
    (II) has information that is necessary for the officer to conduct an official duty related to subclause (I);

    (ii) locating or apprehending the member is an official duty; and
    (iii) the request is being made in the proper exercise of an official duty; and

  (F) the safeguards shall not prevent compliance with paragraph (15) or (18)(B) or subsection (u) . . . .

7 U.S.C. §2020(e)(8).

  Regulations governing requirements for participating state agencies provide that:

  (1) Use or disclosure of information obtained from SNAP applicant or recipient households shall be restricted to:

  (i) Persons directly connected with the administration or enforcement of the provisions of the Food and Nutrition Act of 2008 or regulations, other Federal assistance programs, federally-assisted State programs providing assistance on a means-tested basis to low income individuals, or general assistance programs which are subject to the joint processing requirements in § 273.2(j)(2).

  (ii) Persons directly connected with the administration or enforcement of the programs which are required to participate in the State income and eligibility verification system (IEVS) as specified in § 272.8(a)(2), to the extent the SNAP information is useful in establishing or verifying eligibility or benefit amounts under those programs;

  (iii) Persons directly connected with the verification of immigration status of aliens applying for SNAP benefits, through the Systematic Alien Verification for Entitlements (SAVE) Program, to the extent the information is necessary to identify the individual for verification purposes.

  (iv) Persons directly connected with the administration of the Child Support Program under part D, title IV of the Social Security Act in order to assist in the administration of that program, and employees of the Secretary of Health and Human Services as necessary to assist in establishing or verifying eligibility or benefits under titles II and XVI of the Social Security Act;

8

>(v) Employees of the Comptroller General's Office of the United States for audit examination authorized by any other provision of law; and
>
>(vi) Local, State, or Federal law enforcement officials, upon their written request, for the purpose of investigating an alleged violation of the Food and Nutrition Act of 2008 or regulation. . . .
>
>(vii) Local, State, or Federal law enforcement officers acting in their official capacity, upon written request by such law enforcement officers that includes the name of the household member being sought, for the purpose of obtaining the address, social security number, and, if available, photograph of the household member, if the member is fleeing to avoid prosecution or custody for a crime, or an attempt to commit a crime, that would be classified as a felony (or a high misdemeanor in New Jersey), or is violating a condition of probation or parole imposed under a Federal or State law. . . . The State agency shall disclose only such information as is necessary to comply with a specific written request of a law enforcement agency authorized by this paragraph.
>
>(viii) Local educational agencies administering the National School Lunch Program . . . for the purpose of directly certifying the eligibility of school-aged children for receipt of free meals . . . .
>
>(2) Recipients of information released under paragraph (c)(1) of this section must adequately protect the information against unauthorized disclosure to persons or for purposes not specified in this section.

7 C.F.R. § 272.1(c).

      **B.**    **Medicare**

Title XIX of the Social Security Act provides grants to states for medical assistance programs for categorically needy persons. State plans for such programs are required to provide "safeguards which restrict the use or disclosure of information concerning applicants and recipients to purposes directly connected with (i) the administration of the plan; and (ii) the

9

exchange of information necessary to certify or verify the eligibility of children for free or reduced price" meals. 42 U.S.C. § 1396a(a)(A)(7). Medicare regulations require states to "safeguard[]" the names and addresses of applicants and beneficiaries, as well as other enumerated types of information. 42 C.F.R. § 431.305. Moreover, the state "must have criteria specifying the conditions for release and use of information about applicants and beneficiaries." 42 C.F.R. § 431.306(a). These "policies must apply to all requests for information from outside sources, including governmental bodies, the courts or law enforcement officials." 42 C.F.R. § 431.306(e). And "[i]f a court issues a subpoena for a case record . . . the agency must inform the court of the applicable statutory provisions, policies, and regulations restricting disclosure of information." 42 C.F.R. § 431.306(f).

### C.     Federal Intervenors' Argument

In urging this Court to vacate its April Order, Federal Intervenors argue that the statues and regulations governing Medicare and SNAP provide for limited disclosure of the PII of applicants for and beneficiaries of these programs and the disclosure ordered by this Court does not fall within the parameters of that limited disclosure.

### D.     Discussion

The Federal Rules of Civil Procedure allow for "discovery regarding any nonprivileged matter that is relevant to a party's claims or defenses" as well as "[i]n aid of [a] judgment." Fed. R. Civ. Pro. 26(b)(1) and 69(a)(2).

The statutes and regulations relied upon by the Federal Intervenors provide for the confidentiality of PII of applicants and beneficiaries. But the designation of information as

confidential does not necessarily prohibit its disclosure. *See Assoc. for Women in Science v. Califano*, 566 F.2d 339, 343-344 (D.C. Cir. 1977). *Accord Zambrano v. I.N.S.*, 972 F.2d 1122, 1125 (9th Cir. 1992), *vacated and remanded on other grounds*, 113 S. Ct. 3028 (1993); *Steinberg v. Mount Sinai Med. Ctr., Inc.,* 2014 WL 1311572 (E.D.N.Y. Mar. 31, 2014); *In re Zyprexa Prods. Liab. Litig.*, 254 F.R.D. 50 (E.D.N.Y. 2008); *In Re Grand Jury Subpoena Duces Tecum,* 2001 WL 896479 (W.D. Va. June 12, 2001)*; Zaccaro v. 50 East 196th Assoc., L.P.*, 1997 WL 661905 (S.D.N.Y. 1997); 23 Fed. Prac. & Proc. Evid. § 5437 (1st ed.) (noting that the bulk of federal statutes do no more than forbid disclosure; privilege from disclosure "can be inferred from language that makes the information immune from process or providing that a person cannot be compelled to reveal it").

There is no doubt here that the information sought is relevant to the execution of the relief awarded in the judgment. Given the statutorily based confidentiality provisions and the aforementioned Federal Rules of Civil Procedure, it appears that the appropriate analysis is whether the information Plaintiffs seek is protected from disclosure by privilege. *See, e.g., Assoc. for Women in Science*, 566 F.2d at 344; *Steinberg*, 2014 WL 1311572, at *3. See generally Baldrige v. Shapiro*, 455 U.S. 345, 360 (1982) ("If a privilege exists, information may be withheld, even if relevant to the lawsuit and essential to the establishment of plaintiff's claim.").

"It is well recognized that a privilege may be created by statute. A statute granting a privilege is to be strictly construed so as to 'avoid construction that would suppress otherwise competent evidence.'" *Baldrige*, 455 U.S. at 360 (quoting *St. Regis Paper Co. v. United States,* 368 U.S. 208, 218 (1961)); *accord Chaplaincy of Full Gospel Churches v. England*, 234 F.R.D.

7, 11 (D.D.C. 2006) ("[I]t is well established that courts are to avoid construing confidentiality provisions in statutes as barring disclosure for discovery purposes unless the statute clearly and unambiguously requires such suppression."). Courts have observed that "when Congress has intended [information] not to be subject to compulsory process it has said so." *St. Regis Paper*, 368 U.S. at 218; *see also Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1343 (D.C. Cir. 1984) ("Congress must 'clearly' and 'strongly' indicate its intent to contradict th[e] broad objective favoring disclosure in judicial proceedings," and "where Congress has thought it necessary to protect against court use of records, it has expressly so provided by specific language."); *Freeman v. Seligson*, 405 F.2d 1326, 1348–52 (D.C. Cir. 1968). Thus, certain statutes expressly provide, for example, that various information is "immune from legal process" and/or "shall not be subject to discovery." *See, e.g.,* 15 U.S.C. § 2055(e)(2) (2000) (certain consumer product safety reports "shall be immune from legal process and shall not be subject to subpoena or other discovery in any civil action in a State or Federal court or in any administrative proceeding"); 20 U.S.C. § 9573(d)(1)(B) (2000) ("Individually identifiable information . . . shall be immune from legal process and shall not, without the consent of the individual concerned, be admitted as evidence or used for any purpose in any action, suit, or other judicial or administrative proceeding"); 22 U.S.C. § 3144(d) (2000) (foreign investment information "shall be immune from legal process and shall not be used as evidence or for any purpose in any Federal, State, or local government action, suit, or other administrative or judicial proceeding except as necessary to enforce . . . the provisions of . . . this section."); 23 U.S.C. § 409 (2000) (certain highway safety data "shall not be subject to discovery or admitted into evidence in a

12

Federal or State court proceeding or considered for other purposes in any action for damages"); 42 U.S.C. § 3789g(a) (2000) (certain information collected of the Office of Justice Programs "shall be immune from legal process, and shall not, without the consent of the person furnishing such information, be admitted as evidence or used for any purpose in any action, suit, or other judicial, legislative, or administrative proceedings").

Unlike the foregoing statutes, neither the statutes or regulations relied upon by Federal Intervenors specifically provides that information is not subject to discovery. Indeed, while the Medicaid regulations provide that a state's policies regarding disclosure must apply to courts, it does not require that the information be shielded from disclosure. Rather, it simply requires that the agency "inform the court of the applicable statutory provisions, policies, and regulations restricting disclosure of information."

USA Intervenors do not address the issue of privilege. Rather they argue that "Courts analyzing the federal statutes and regulations governing SNAP and Medicaid have authorized disclosure only in the most limited of circumstances." USA Intervenors Mem. at 9. In support of that proposition they cite a number of cases. These cases suggest, however, that disclosure outside the parameters enumerated in the statutes is permissible, in other words that the information is not privileged.[4] For example, in *Hassan v. United States*, 2006 WL 681038 (W.D. Wash. Mar. 15, 2006) merchants challenging their disqualification under the Food Stamp Act for allegedly unlawful food stamp trafficking sought disclosure of the identities of individuals who

---

[4] *Roberts v. Austin*, 632 F.2d 1202, 1214 (5th Cir. 1980), cited by USA Intervenors, is distinguishable. That court granted a preliminary injunction barring wholesale disclosure of PII of Food Stamp recipients to a prosecutor where the prosecutor had no basis to suspect fraud.

13

allegedly trafficked with them. The *Hassan* court granted a motion to compel, specifically rejecting the argument that the confidentiality provisions of the Food Stamp Act[5] prohibited the disclosure. *Id*. at *2-3. *See also In re Zyprexa*, 254 F.R.D. at 78, 88-89 (ordering disclosure of de-identified medical records of Medicaid patients prescribed the drug at issue in litigation seeking damages for unlawful marketing);[6] *Protection & Advocacy System, Inc. v. Freudenthal*, 412 F. Supp. 2d 1211 (D. Wyo. 2006) (authorizing disclosure of PII of Medicaid recipients living in state institution to corporation designated to assure protection of civil rights of individuals with mental illness); *In re Grand Jury Subpoena Dated Nov. 14, 1989*, 728 F. Supp. 368, 369, 374 (W.D. Pa. 1990) (applying a balancing test in denying a motion by the Government to enforce a subpoena seeking PII of Food Stamp recipients as part of an investigation of a heroin and cocaine distribution ring).

In sum, Federal Intervenors provide no basis for vacatur of the Court's April Order.

## IV.   Disclosure Under State Statutes

State Intervenors rely upon a number of statutes and regulations regarding the confidentiality of information in the WMS database in addition to those previously discussed. State Intervenors Mem. at 3-9. It is not necessary to detail each of them, it is sufficient to state that they provide for the confidentiality of the information of persons applying for benefits and limit to whom the information may be disclosed. *See, e.g.,* SSL §§ 21(3), 136(2), 459-b, 459-c;

---

[5] Until 2008, the FNA was known as the Food Stamp Act.

[6] Interestingly, the *Zyprexa* court noted that the "Notices of Privacy Practices issued by all the States' [involved in that litigation] make clear that health information obtained by the agencies may be disclosed pursuant to court order." 254 F.R.D. at 58 & n.11 (citing said privacy notices).

42 U.S.C. § 602(a)(1)(A)(iv) (requiring that states, such as New York, that receive funds for certain public assistance restrict the use and disclosure of information).

With respect to the federal statutes relied upon, as previously discussed those statutes do not protect against court use of records and courts have ordered disclosure outside the parameters enumerated in the statutes and regulations. That conclusion applies equally to SSL §§ 21 and 136. As the State Intervenors note, "New York federal and state courts have in several instances ordered the disclosure of public assistance data for litigation purposes notwithstanding the confidentiality provision of SSL §§ 21 and 136." State Intervenors' Mem at 15. They argue, however, that the proposed disclosure "is distinguishable from these precedents in at least three respects (a) the search here is far broader, attempting to obtain the personal information of thousands of people across data compiled from every public benefit program; (b) there is no colorable connection at all to a public benefit program; and (c) several categories of information in the WMS are governed by other confidentiality provisions of federal and state law aside from SSL §§ 21 and 136." *Id*. It is to these arguments that the Court now turns.

That the search here encompasses information of a large number of individuals does not preclude disclosure. For example, in *Zyprexa,* disclosure of a "statistically significant sampling" of de-identified medical records maintained by five state (Connecticut, Louisiana, Mississippi, Montana and New Mexico) for Medicaid patients who were prescribed the drug at issue was ordered. 254 F.R.D. at 59. The decision does not disclose the volume of records at issue. However, other filings in that case indicate that a statistically significant sampling of just one state would be 4,000. *See In re Zyprexa Prod. Liab. Litig.*, 04-MD-1596 at DE 1937 (Aff. from

New Mexico Official referring to a statistically significant sampling from that state as involving the records of 4,000 individuals).

Moreover, there are numerous state court cases, some of which are cited in the April Order, in which disclosure was ordered despite the fact that the request was made in a case untethered to any public benefit program. *See, e.g., Zaccaro v. 50 E. 196th Assocs.*, 1997 U.S. Dist. LEXIS (S.D.N.Y. Oct. 23 1997) (granting motion to compel disclosure of social services files for claimant in action for damages due to injuries sustained as a result of infant claimant's ingestion of lead paint on premises on the theory the files might contain information relevant to an alternative causation defense); *W. v. U.*, 44 A.D.2d 727 (2d Dept. 1974) (holding that putative father in paternity action was entitled to subpoena welfare department to support his claim that mother had made inconsistent statements concerning parentage of children); *In re Estate of Robinson*, 140 Misc.2d 599 (1988) (in action by mother of decedent to compromise and settle cause of action for minor decedent, limited access granted to guardian ad litem appointed for decedent's father where guardian was not requesting information concerning income or benefits of recipient but only information relevant to the identity of his ward as demand for identify of unknown father necessitated minimal intrusion onto confidentiality of records so that guardian could perform his function): *Paine v. Chick*, 50 A.D.2d 686 (3d Dept. 1975) (in action for damages for personal injury and lost wages lower court properly denied motion to quash a subpoena served on Commissioner of Social Security as it did not jeopardize the real purpose and function of statute restricting disclosure and was justified as there were no other relevant documents available.)

16

The confidentiality provisions of the federal statutes relied on by State Intervenors have already been addressed. They also point to SSL § 459-h(1) which makes confidential "[t]he street address of any residential program for victims of domestic violence" which they proffer "preserves the ability of residential programs to provide security for victims of domestic violence who may be at serious risk of physical and emotional harm by their partners." State Intervenors' Mem. at 21. Certainly, this provision and its purpose would, at the very least, warrant a carefully nuanced application of a balancing of interests. The Court has been advised, however, that none of the 5,088 class members for whom updated addresses were found in the WMS represent residents of domestic violence shelters. *See* Ex. 1 to Pl.'s Opp. Mem. (email from Nassau County Attorney Bureau Chief stating there is no such data).

In sum, State Intervenors provide no basis for vacatur of the Court's April Order.

## CONCLUSION

It is important to reiterate that the purpose of the disclosure authorized by the April Order is solely to notify the as yet unheard from class members about the monetary relief to which they are entitled under the judgment in this case. Moreover, that disclosure was limited to obtaining updated addresses for such class members,[7] nothing more. Neither plaintiffs' counsel, the class administrator, or even the Court will have access to the database or know from what social service program or programs the addresses were garnered. The Court directs that the information is not to be used for any other purpose or otherwise disseminated.

---

[7] The time for exclusion from the class has long passed. Having failed to be excluded, the class members whose information is sought are, in a sense, parties to this litigation. Thus the ordered disclosure is not of information of strangers to this lawsuit.

17

The motions to intervene are granted. The motions for vacatur of the April Order are denied. The County is directed to provide the updated addresses to the claims administrator within ten (10) days of the date of this Order.

**SO ORDERED.**

Dated: Central Islip, New York
       July 26, 2017                                  /s  Denis R. Hurley
                                                                  Denis R. Hurley
                                                                  United States District Judge