UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X

In re NASSAU COUNTY STRIP
SEARCH CASES

MEMORANDUM & ORDER
99-CV-2844 (DRH)

---------------------------------------------------X

**A P P E A R A N C E S:**

**For Plaintiffs:**
    Herbst Law PLLC
    420 Lexington Avenue - Suite 300
    New York, New York 10170
    By:    Robert L. Herbst, Esq.

**For Defendants:**
    Nassau County Attorney's Office
    Carnell T. Foskey
    County Attorney
    One West Street
    Mineola, New York 11501
    By:    Liora M. Ben-Sorek, Esq.

**HURLEY, Senior District Judge:**

The purpose of this Memorandum is to address (1) plaintiffs' application to "extend the deadline for certain class members to file claims from February 15, 2018 to November 24, 2018" and for "assistance in requiring the County to pay the Administrator's long-standing invoices forthwith . . . " (Pls.' Feb. 7, 2018 Ltr. (DE 549) at 1) and (2) defendants' request to permit payment of the claims administrator's invoices out of the funds deposited with the Court and for the return of $2 million of the funds on deposit to the County.

I.      **The Application to Extend the Deadline to File Claims**

   A.      **The Position of the Parties**

The deadline to file claims should be extended for class members who were mailed notice in the two most recent 2017 mailings,[1] plaintiffs argue, "to permit more of those class members who, through no fault of their own, only recently received notice of this lawsuit and of their right to recover for the violation of their state constitutional rights."

Defendants oppose the application asserting (1) it will prejudice the defendants as the unclaimed monies from the settlement fund would revert to the County and the parties had agreed to the date for submission of claims; (2) the delay is sending notices to class members and obtaining updated addressed is attributable to the administrator and class counsel; and (3) plaintiffs only offer speculations as to why class members may have delayed in submitting their claims. (Defs.' Feb. 22, 2018 Ltr. at 2-3.)

In reply, plaintiffs assert no prejudice will occur as an extension of time will not increase the amount of the defendants' liability set out in the judgment entered in this case; a blanket extension will decrease the amount of litigation as excusable neglect issues will not have to be individually determined;and the actions of the administrator and counsel were reasonable and not dilatory. (Pls.' March 9, 2018 Ltr at 1-6.)

---

[1] The dates of these mailing are August 20 and November 20. The August 10 mailing was a result of this Court's Order directing the County to match the database of class members to the New York State Department of Social Services Database. The November 20 mailing resulted from plaintiffs prevailing upon the County and the New York State Department of Motor Vehicles to permit the matching of class members who had not filed claims to their databases.

B.  **Discussion**

As framed by the parties, whether the time to file claims should be extended should be analyzed using the four elements for determining excusable neglect under Rule 6(b) of the Federal Rules of Civil Procedure as set forth in *Pioneer Investment Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380 (1993). Those elements are: (1) danger of prejudice to the adversary, (2) length of the delay and its potential impact on judicial proceedings, (3) reason for the delay and whether it was within the reasonable control of the party seeking relief, and (4) whether the party seeking relief acted in good faith. *Id*. at 395. This inquiry is an equitable one addressed to the discretion of the court. *See In Re Crazy Eddie Sec. Lit.*, 906 F. Supp. 840, 843-44 (E.D.N.Y. 1995) (citing *Zients v. LaMorte*, 459 F.2d 628, 629-30 (2d Cir. 1972); *In re "Agent Orange" Prod. Liab. Litig*., 611 F. Supp. 1396, 1417 (E.D.N.Y. 1985)).

As to the first element, defendants argue that "where unclaimed monies from a settlement fund would revert to the defendants, as is the situation here, courts will not permit late-filed claims (or the extension of the filing deadline) because 'the consequence is to increase the obligation of the defendant.'" (Defs.' Feb. 22, 2018 Ltr. at 2 (citing *Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F. Supp. 2d 440, 445-46 (S.D.N.Y. Mar. 1, 2004) for the proposition that prejudice found where defendant was entitled to receive back any excess unpaid claims). However, as plaintiffs point out:

> *Dahingo* has no application here, where there was no settlement agreement embodying terms which were the subject of negotiation and compromise by the parties, but rather a final judgment whose terms were set by the Court. Unlike a settlement agreement, a final judgment is not a contract, and is subject to equitable principles permitting modification, rather than contract principles precluding modification of the agreement between the parties. Indeed, the

> *Dahingo* court recognized that, even in the settlement context, where the terms of the agreement, including a time bar or claims filing deadline, were established in the first instance by the court and not subject to negotiation between the parties, such terms may be modified by the court even where the consequence is to decrease the amount of the settlement funds ultimately reverting to defendants.

(Pls.' Mar. 9, 2018 Ltr. at 2. (citing 312 F. Supp. 2d at 446-47).

Here, the claim filing deadline was initially set by the Court in the April 10, 2014 Final Judgments as December 15, 2015. After the appellate proceedings terminated in mid-2016 the parties recognized that the deadline would have to be updated and recommended to the Court that a deadline be set that would give effect to the original deadline of approximately 20 months from the date of the judgment. (*See* DE 483 at 2.) Viewed through this prism, the deadline for filing claims was established by the Court not agreement of the parties. Moreover, extending the time to file claims will not increase the County's liability as that liability was set in the Final Judgment entered in April 2010. It will affect the County in the sense that, pursuant to this Court's ruling, any unclaimed funds will revert to the County. However, given the experience thus far with the percentage of class members filing claims, it is more likely then not that only a small amount of additional claims will be filed if the period is extended and thus the affect on the County will be de minimis.

The first factor favors granting the requested extension of time to file claims.

Turning to the second factor, the length of the "delay", i.e. the extension sought, is a mere nine months. Viewed against the better part of two decades that this matter has been litigated and given a class of essentially unsophisticated class members who have proven difficult to locate, a nine month extension of the time to file claims seems reasonable. It will also cut

down on future litigation to the extent that the claims of class members who file within those nine months will not have to be individually analyzed for excusable neglect.[2]

The third and fourth factor also favor granting the requested relief. The Court rejects the suggestion that the claims administrator and plaintiffs' counsel were delinquent in not raising until 2016 the issue of returned mail or incorrect addresses given that prior notices mailed to class member in 2009 and 2013 were presumably returned. As plaintiffs point out:

> The notion that [plaintiffs] should have spent tens of thousands of the County's dollars in locating class members before the post-*Florence* litigation in this Court, the Court of Appeals and the Supreme Court were resolved, when there was serious doubt that the class would recover at all if the County were successful on appeal, flies in the face of common sense and reasonable class action administration. Indeed, for many years, the County was confident that there would ultimately be no recovery in this case, as exemplified by their unwillingness to settle the case even after a liability judgment was issued a decade before final appellate resolution in late 2016, which is when we raised the issue of returned mail and incorrect addresses, as the County notes.

(Pls.' Mar. 9, 2018 ltr at 5-6.)

The application of the *Pioneer* factors favors the granting of the requested extension of time. Accordingly, plaintiffs' application to extend the time for the filing of claims to November 24, 2018 for class members who were mailed notices in August and November 2017 is granted.

## II. Payment of Administrator's Invoices

According to the County, the delay in payment of the class administrator's invoices is due to said administrator improperly filling out the vouchers necessary for payment, something the

---

[2] Any future applications for an extension of time to file claims will only be entertained on an individual basis.

class administrator disputes. Plaintiffs assert that the request to pay these invoices out of the funds on deposit should be denied because the County is in "flagrant violation of this Court's Judgment mandating payment of these invoices within 30 days." (Pls.' Mar. 9, 2018 Ltr. at 6.)

While the Court understands plaintiffs' frustration with what they perceive to be red tape, the Court is also cognizant of the County's need to ensure only proper invoices are paid. On balance and in an effort to ensure that the claims administrator receives the payment due it, the County's application to have the currently pending, unpaid invoices[3] of the claims administrator paid out of the funds on deposit with the Court is granted.

### III. Return of a Portion of the Funds on Deposit

The last issued to be addressed is the County's application for return of $2 million of the funds on deposit with the Court. By way of brief background, to effectuate the awarded recovery of general damages in the amount of $500.00 per strip search, this Court ordered defendants to deposit into Court the sum of $11,508,000.00 into the Court. Taking into account the distributions for attorneys' fees and costs and the payment of approved claims thus far, there remains $ 3,795,885.37 on deposit.[4] Given that there are only slightly more than 50 disputed claim, withdrawing $2 million and returning it to the County will not endanger recovery of any of the disputed claim. And, it would appear that returning said funds would still leave adequate funds on deposit to pay any more timely filed claims, even with the granting of an additional nine

---

[3] According to the County, the amount of unpaid invoices totaled $54,907.03 as of February 21, 2018. (Defs.' Feb. 22, 2018 Ltr. at 4.)

[4] This figure reflects interest earned as well as the distribution of $230,099.20 approved on March 14, 2018.

months to file claims and the payment of the currently outstanding invoices of the class administrator out of these funds.  Finally, plaintiffs do not object to granting the requested relief. Thus the application is granted.

## IV.     Conclusion

Plaintiffs' application to extend the time to file claims to November 24, 2018 is granted, as are the County's applications to have the currently pending invoices of the claims administrator paid out of the funds on deposit with the Court and for the return to the County of $2 million of the funds on deposit.  The County shall file, under cover of letter, proposed orders for each of the two foregoing distributions within ten (10) days of the date of this Order.

**SO ORDERED.**

Dated: Central Islip, New York
          March 27, 2018                                       /s  Denis R. Hurley
                                                                              Denis R. Hurley
                                                                              United States District Judge